# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BAC LOCAL UNION 15 WELFARE
FUND,

    and

CRAIG HYDEMAN and GREGORY S.
DAVEY, TRUSTEES OF THE BAC
LOCAL UNION 15 WELFARE FUND,

    and

BAC LOCAL UNION 15
APPRENTICESHIP AND TRAINING
FUND, a Trust Fund,

    and

CRAIG HYDEMAN and DR. RICHARD
BRUCE, TRUSTEES OF THE BAC
LOCAL UNION 15 APPRENTICESHIP
AND TRAINING FUND,

    and

BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND,

    and

JAMES BOLAND and MATTHEW
AQUILINE TRUSTEES OF THE
BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND,

    and

INTERNATIONAL MASONRY
INSTITUTE,

    and

CASE NO:  2:16-cv-2242-JTM-GEB

JAMES BOLAND and MICHAEL
SCHMERBECK TRUSTEES OF THE
INTERNATIONAL MASONRY
INSTITUTE,

     Plaintiffs,

v.

WILLIAMS RESTORATION COMPANY,
INC.,

   and

FOX HOLDINGS, INC.,

     Defendants.

## FOX HOLDINGS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND REQUEST TO TAKE JUDICIAL NOTICE

Defendant Fox Holdings, Inc. submits the following memorandum in support of its motion to dismiss the claims asserted against it in the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and in support of its request to take judicial notice of certain documents.

## INTRODUCTION

Plaintiffs are eight welfare, pension, or training funds of the Bricklayers and Allied Craftworkers Union Local No. 15 (the "Union"). Plaintiffs allege claims arising under ERISA and the Labor Management Relations Act against Williams Restoration Company, Inc. and, now, Fox Holdings, Inc. Plaintiffs' new allegations to bring Fox Holdings into this matter show that the alleged liability of Fox Holdings is based solely upon a claim for successor liability—that Fox Holdings somehow allegedly took on Williams Restorations' obligations under an alleged

collective bargaining agreement with the Union, obligating it to pay benefits to the Plaintiff-funds.

Conspicuously absent from the First Amended Complaint is an allegation that Fox Holdings ever executed or otherwise entered into a collective bargaining agreement with the Union (or that Williams Restoration ever did, either).

Also, conspicuously absent is any allegation that shows how or why Fox Holdings is alleged to have assumed the liability Williams Restoration allegedly had under a collective bargaining agreement it was "bound to." Instead, Plaintiffs plead only that "Fox Holdings, Inc. purchased Williams Restoration," (¶11), and that Fox Holdings continued Williams Restoration's business and "is the successor of Williams Restoration" by performing the same type of work, employing the same employees, retaining the same management, holding itself out as successor, and maintaining the same office, equipment, and customers, (¶13), allegations which are irrelevant to the question of whether Fox Holdings may have assented to a written agreement obligating it to pay benefits into the Plaintiff-funds.

Plaintiffs know that Fox Holdings acquired only certain, limited assets of Williams Restoration via an Asset Purchase Agreement on November 6, 2014. Plaintiffs know that the agreement expressly excluded assumption of liabilities, such as any alleged under collective bargaining agreements. They know this because the NLRB already considered the exact question of whether Fox Holdings is a successor to any collective bargaining agreement or adopted such an agreement by its conduct. The Union brought a charge against Fox Holdings premised on the exact same facts. The NLRB dismissed, finding Fox Holdings entered into an asset purchase agreement with Williams Restoration and insufficient evidence to move forward with a charge that Fox Holdings adopted the collective bargaining agreement through its conduct.

Despite those rulings and despite knowing that Fox Holdings purchased only assets of Williams Restoration and never executed a collective bargaining agreement with the Union, its trustees, the Plaintiff-funds, have now asserted claims against Fox Holdings that are wholly unsupported and fail to state claims for relief which this Court may provide. As such, the claims against Fox Holdings should be dismissed with prejudice.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs have alleged violations of ERISA and the LMRA. They are trustees of several union welfare and benefit funds and seek allegedly delinquent contributions to those funds from defendants Williams Restoration and, now, the company that purchased limited assets from Williams, Fox Holdings.

Fox Holdings has moved to dismiss for failure to state a claim for which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). It has also requested the Court take judicial notice of documents submitted with its Index of Evidence in support of the Motion to Dismiss.

## STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

1.      Plaintiff-funds were allegedly established in 1973. (First Am. Compl. ¶3). The Union allegedly became a successor party to collective bargaining agreements with Williams Restoration after the Union's merger with another BAC local. (*Id.* ¶7).

2.      Fox Holdings is alleged to have "purchased Williams Restoration" on November 10, 2014. (First Am. Compl. ¶10). In fact, Fox Holdings purchased only certain limited assets of Williams Restoration via an Asset Purchase Agreement on November 6, 2014. (Index of Evid., Fox Aff., Ex. A, ¶1.1).

3.      Plaintiffs allege on information and belief that Fox Holdings continued Williams Restoration's business and is its successor. (First Am. Compl. ¶13). However, Plaintiffs' beneficiary, the Union, knows from prior NLRB proceedings that this is not true and that Fox Holdings acquired only certain limited assets of Williams Restoration. (Index of Evid., Schorr Aff. Exs. A-B).

4.      Plaintiffs allege on information and belief that Fox Holdings employed bricklayers under collective bargaining agreements and "evidenced an intent to be bound such agreements." (First Am. Compl. ¶14). Plaintiffs do not allege what information has led them to this conclusory belief.

5.      Plaintiffs allege that Fox Holdings is "bound by all collective bargaining agreements." (*Id.* ¶15).

6.      Plaintiffs allege that Fox Holdings is obligated to pay and contribute to the Plaintiff-funds and has failed to do so. (*Id.* ¶¶17-18). It seeks various types of relief for such alleged failures and makes additional counts for each Plaintiff-fund. (*Id.* ¶24, p. 7; see Counts II-IV of the First Am. Compl.).

7.      The Union and Fox Holdings participated in NLRB proceedings in which the question of whether Fox Holdings was bound by any collective bargaining agreement with the Union was considered. (Index of Evid., Schorr Aff., Exs. A-B). The NLRB dismissed the charge and the Union's appeal was denied. The NRLB found that Fox Holdings was not bound by a collective bargaining agreement, either by express agreement, assumption of liability of Williams Restoration, or by adoption by its conduct. The same attorneys representing the Plaintiff-funds in this matter represented the Union in the NRLB proceedings. (*Id.*).

## QUESTIONS PRESENTED

1.      Whether the Court should take judicial notice of the documents attached to the Affidavit of Jordan Fox, consisting of the Asset Purchase Agreement between Williams Restoration and Fox Holdings, and whether the Court should consider that document on the Motion to Dismiss.

2.      Whether the Court should take judicial notice of the documents attached to the Affidavit of Mark M. Schorr, consisting of the dismissal notice and denial of appeal notice from the NLRB issued to the attorneys for Union, and whether the Court should consider those documents on the Motion to Dismiss.

3.      Whether Plaintiffs have sufficiently alleged that Fox Holdings is bound by a written agreement to pay benefits to the Plaintiff-funds.

4.      Whether Plaintiffs have sufficiently alleged that Fox Holdings is bound by other means, such as its course of conduct, to pay benefits to the Plaintiff-funds.

## APPLICABLE LEGAL STANDARD

As this Court has set out in *Fulghum v. Embarq Corp.*, No. 07-2602-KHV, 2008 U.S. Dist. LEXIS 104229, at *16-19 (D. Kan. Dec. 2, 2008), in ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiffs. *See Zinermon v. Burch*, 494 U.S. 113, 118, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d

929 (2007). In other words, plaintiffs must allege facts sufficient to state a claim which is facially plausible—rather than merely conceivable. *See id.* The court makes all reasonable inferences in favor of plaintiffs. *See Zinermon*, 494 U.S. at 118.The court need not accept as true those allegations which state only legal conclusions. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail but whether they are entitled to offer evidence to support their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements which they must prove. *See Hall*, 935 F.2d at 1110.

## ARGUMENTS & ANALYSIS

### I. The Court may take judicial notice of the Asset Purchase Agreement and NLRB's dismissal and denial notices.

Fox Holdings asks the Court to take judicial notice of the Asset Purchase Agreement attached to the Fox Affidavit and the NLRB decision letters attached to the Schorr Affidavit, both submitted with the Motion to Dismiss, and to consider these items when ruling on the Motion.

Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court"; or (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (f). Judicial notice may be taken on a motion to dismiss. *See* 21B Charles Alan Wright & Kenneth W. Graham, *Fed. Practice & Procedure* §

5110, at 294 & n.17 (2d ed. 2005). While ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, see Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, *see Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 2009 WL 2482171, at *7 (D.N.M. 2009)(Browning, J.)(citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)).

Fox Holdings submits that the Asset Purchase Agreement and NLRB decision letters are proper subjects for judicial notice. The Agreement is central to the Plaintiffs' allegations and claims, and its accuracy cannot be reasonably questioned. The NLRB decision notices are public records and, therefore, their accuracy also cannot be questioned.

### 1.   The Asset Purchase Agreement is central to the Plaintiffs' claims.

In the First Amended Complaint, Plaintiffs allege that Fox Holdings purchased Williams Restoration on November 10, 2014. (Am. Compl. ¶11). They further allege that Fox Holdings continued Williams Restoration's business and is the successor, including particular aspects of such alleged continuation. (Am. Compl. ¶13). Notably absent from the allegations is a description or even summary of the type of transaction that led to Fox Holdings' "purchase" of Williams Restoration. It was not a wholesale purchase of Williams Restoration; rather Fox Holdings purchased certain, limited assets pursuant to the Asset Purchase Agreement, (*see* Index of Evid., Fox Aff., Ex. A, ¶1.1), including the trade name, inventory, part of accounts receivable, and the like. There was no agreement to take on any liability of Williams Restoration with regard to any collective bargaining agreement (even if Williams Restoration had such a liability, which it has denied). There was assumption of only a very limited set of liabilities. (*See id.* ¶1.3-1.4). The parties are aware of the Asset Purchase Agreement, it was at issue in the Union's NLRB

proceedings against Fox Holdings, and the Court should consider in on this Motion as it is central to Plaintiff's claims.

Fox Holdings asks the Court to take judicial notice of the Asset Purchase Agreement, authenticated by Jordan Fox in his Affidavit attached to the Motion to Dismiss. Fox Holdings submits the Court can do so without converting this to a motion for summary judgment because the Agreement is central to the claims and properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1193 (D.N.M. 2013). On a motion to dismiss, the Court must consider not only the complaint, but also "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") Indeed, "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff had relied." *GFF*, 130 F.3d at 1385. Further, if the documents central to a plaintiff's claim "contradict the allegations of the amended complaint, the documents control and [the] Court need not accept as true the allegations in the complaint." *Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

Here, Plaintiffs, through the Union-beneficiaries for which they are trustees, have been in possession of the Asset Purchase Agreement through the NLRB proceedings, which the Unions participated in against Fox Holdings. (See Schorr Aff. Ex. A, p. 1). The Plaintiffs have artfully pleaded their claims to not specify Fox Holdings purchased merely certain assets of Williams Restoration, nots its operations or the business outright. This Court ought to consider the Asset Purchase Agreement as part of the pleadings when considering Fox Holdings' motion to dismiss.

2.  **The NLRB dismissal and denial notices are public records and offered to show the Plaintiffs and their attorneys' knowledge of the existence and terms of the Asset Purchase Agreement and other issues considered by the NLRB.**

The Court should also take judicial notice of the NLRB dismissal notice and denial of appeal attached to the Schorr Affidavit as Exhibits A and B. The NRLB letters are addressed to the same firm representing the Plaintiffs in this case. Judicial notice is requested not for the truth of any matter asserted in these documents, but to show that Plaintiffs and their counsel have knowledge of the Asset Purchase Agreement and the fact that Williams Restoration entered into it with Fox Holdings "to acquire some of the assets of Williams, including its trade name," (See Schorr Aff., Ex. A, at p. 1), but did not assume liability under any collective bargaining agreement. Furthermore, the dismissal notice shows that Plaintiffs and their counsel know that Fox Holdings did not sign a collective bargaining agreement with the Union for which Plaintiffs are trustees of assets, another fact artfully omitted from the First Amended Complaint.

NLRB decisions, such as the dismissal notices and denials of appeals, are public records and publicly available on the NLRB's website. They are both available online at: https://www.nlrb.gov/case/14-CA-153558.

For these reasons, Fox Holdings asks the Court to take notice of the NLRB decision letters attached to the Schorr Affidavit for the limited purposes set out above.

## II. The First Amended Complaint fails to allege there was a written agreement that obligated Fox Holdings to pay welfare benefits into the Plaintiff-funds. Therefore, dismissal with prejudice is appropriate.

Plaintiffs' claims arise under 29 U.S.C. § 186 and 29 U.S.C. § 1145 (First Am. Compl. ¶¶1-2). Section 186 makes it unlawful for an employer to pay money to a union or its representative for employee benefits unless it does so pursuant to a written agreement that sets out the "detailed basis on which such payments are to be made." 29 U.S.C. § 186(c)(5)(B). It is therefore indisputable that before any payment can be required to a union's welfare fund, there must be an enforceable agreement binding the parties and establishing the basis on which payments are to be made to the plan. 29 U.S.C. § 186(c)(5)(B); *see also Moglia v. Geoghegan*, 403 F 2d, 110, 116 (2d. Cir. 1968) ("[A]bsent the written agreement, there is no valid Section 302 [29 U.S.C. § 186] trust as to those employer contributions; the parties making and accepting such contributions are violating Section 302, and the intended beneficiary of the illegal employer contributions has no legal right under Section 302 to the benefits normally derived from employer contributions to the trust fund."). If a written agreement with a detailed basis exists, then, under § 1145, an employer "must make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. Thus, for the Plaintiffs to have a claim against Fox Holdings in this case, they must be able to allege there was a written agreement governing the obligation to make payments.

The Plaintiffs have not done that. They fail to allege there was any written agreement between them and Fox Holdings or between Plaintiffs' beneficiary, the Union, and Fox Holdings. Plaintiffs allege only the following:

- Williams Restoration was "bound to collective bargaining agreements," not that it ever entered into any such written agreement, (First Am. Compl. ¶6); and

- Fox Holdings purchased Williams Restoration, without alleging it was merely an asset purchase, (*id.* ¶11), containing no assumption of any liability to pay into the funds.

These allegations are insufficient to claim that Fox Holdings had a written agreement with the Plaintiffs or their beneficiaries and the claims should be dismissed based upon the plain language of the statute. *See, e.g., Firesheets v. A.G. Bldg. Specialists,* 134 F.3d 729, 732 (5th Cir. 1998) *citing Moglia,* 403 F.2d 110 and *Bricklayers Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). The *Firesheets* court noted that the Second Circuit has held that "without signatures on the collective bargaining agreement and the trust agreement attached to it, a written agreement under § 302(c) [29 U.S.C. § 186(c)] did not exist." *Id.* The *Firesheets* court further cited its own holding in *Bricklayers* that "a written agreement under § 302(c) [§ 186(c)] did not exist because: (1) the employer did not sign the trust agreements, (2) the collective bargaining agreement anticipated the creation of only one of the two trusts in question, and (3) the trusts were created after the collective bargaining agreement, and therefore could not have been incorporated by reference into the original agreement." *Id.* Per *Bricklayers,* there should be "strict compliance with the written agreement requirement of [§ 186(c)]." *Id.* Under any of the three factors, the Plaintiffs' claims fail in this case. But just looking at the first *Bricklayer* factor— that the employer did not sign the agreement—shows that the Plaintiffs have failed to plead Fox Holdings ever signed a collective bargaining agreement.

Plaintiffs have also failed to plead that Fox Holdings agreed to a collective bargaining agreement in some other fashion. Per *Bricklayers,* course of conduct is insufficient if there is no written agreement. *Id.* To the extent that Plaintiffs intend to allege that Fox Holdings entered into an agreement by means other than writing, that claim also fails under the *Bricklayers'* rationale and as discussed next.

III. **The First Amended Complaint fails to allege sufficient facts to state a plausible claim that Fox Holdings assented to a collective bargaining agreement by its conduct or otherwise. Therefore, dismissal with prejudice is appropriate.**

Plaintiffs fail to allege that there was a signed, written collective bargaining agreement or benefit plan between the Union and Fox Holdings. They do so because they know there is not one. Instead, it appears Plaintiffs intend to proceed on a theory of assent to the collective bargaining agreement by Fox Holdings' conduct, but they allege only the following on information and belief:

- "Upon information and belief," Fox Holdings is successor of Williams Restoration, (*id.* ¶13);

- "Upon information and belief, Fox Holdings, Inc. continued to employ bricklayers covered under the collective bargaining agreement herein mentioned and evidenced an intent to be bound by such agreements," (*id.* ¶14).

These "information and belief" allegations are fatal because there is not sufficient, plausible factual support for them stated in the First Amended Complaint.  The United States District Court for the District of Oklahoma recently noted:

"The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' <u>where the facts are peculiarly within</u>

the possession and control of the defendant." *Arista Records LLC v. Doe 3*, 604
F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted)).
"Information and belief" pleading "is a permissible way to indicate a factual
connection that a plaintiff reasonably believes is true but for which the plaintiff
may need discovery to gather and confirm its evidentiary basis." *Doe v. Brown
Univ.*, 166 F. Supp. 3d 177, 2016 U.S. Dist. LEXIS 21027, 2016 WL 715794 at *
9 (D.R.I. 2016) (internal quotation marks omitted).

*Ritter v. Okla. City Univ.* No. CIV-16-0438-HE, 2016 U.S. Dist. LEXIS 95813, at *4-5 (W.D.
Okla. July 22, 2016) (emphasis added).

The information and belief allegations bulleted above are not facts peculiarly within Fox
Holdings' possession and control. In fact, Plaintiffs have been prosecuting this case since April
2016 against Williams Restoration, the alleged predecessor of Fox Holdings. (Compl, 4/13/16,
Doc. #1). Plaintiffs represented to the Court that discovery showed the need to amend to add Fox
Holdings as a defendant. (Motion for Leave to File First Am. Compl., Doc. #23 and Memo. in
Support, Doc. #24). From whatever was discovered, the Plaintiffs should be able to allege the
details of why they believe and allege that (1) Fox Holdings is "covered under the collective
bargaining agreements" and that (2) it "evidenced an intent to be bound by such agreements."
(First Am. Compl. ¶14). Fox Holdings' liability in this case will hinge on these allegations but
Plaintiffs have failed to state what led them to this belief. Presumably, the alleged "intent" was
evidenced to the Plaintiffs or the Union; otherwise, how could they have reached this belief as to
Fox Holdings' coverage under the collective bargaining agreements (which they asserted as far
back as 2015 in the NLRB proceedings)? Whatever may have "evidenced an intent to be bound"

is not within the possession and control of Fox Holdings and, therefore, not sufficiently alleged on information and belief without more.

In specific circumstances, courts have sometimes found that a written agreement, including a collective bargaining agreement, was adopted by conduct of an employer and gives rise to an obligation to pay into an employee benefit fund. *See, e.g., NRLB v. Haberman Constr. Co.,* 641 F.2d 351, 355-56 (5th Cir. 1981) ("It is well-settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound. . . . Instead, what is required is conduct manifesting an intention to abide by the terms of an agreement.") (citations omitted). In *Haberman*, the court concluded there had been adoption by conduct because the employer contributed to the union's trust funds, used union employees exclusively, observed union holidays, used the union for referrals, paid the union wage scale, allowed the appointment of a union job steward, and the steward testified that he checked with the union's business agent regarding atypical job start times. *Id.* at 356. Plaintiffs have not (and cannot) allege facts to support their bald assertion that Fox Holdings evidenced an intent to be bound similar to the factors evaluated in *Haberman* or other cases analyzing adoption by conduct or the same general factors considered by the NLRB on this issue.

On this exact situation, the NRLB has already weighed in. As shown by the attachments to the Schorr Affidavit, the NRLB assessed the evidence in support of the Union's allegations that Fox Holdings agreed to a collective bargaining agreement by its conduct of continuing to pay some Union employees' benefits into the Plaintiff-funds after purchasing the assets of Williams Restoration. The NLRB's Acting Regional Director found this alone was insufficient:

> The Board has been clear that to find adoption of a collective bargaining
>
> agreement by conduct, there must be evidence beyond the payment of contractual

wages and benefits. . . . Herein, other than the payment of wages and benefits to some of the Employer's employees, there is little additional evidence to support the allegation that the Employer adopted a Section 8(f) agreement with the Union by its conduct. . . . Therefore, I find that the Employer did not have a Section 8(f) bargaining relationship or agreement with the Union and did not have an obligation to abide by the terms of the predecessor's agreement with the Union or have an obligation to bargain with the Union. . . .

(Schorr Aff., Ex. A, p. 2).

Plaintiffs, as trustees and parties in privity with the Union,[1] know the factors they would have to eventually establish to prove Fox Holdings assented to the collective bargaining agreement's terms for paying into the Plaintiff-funds. They know this because of the Union and Plaintiffs' counsels' participation in the NRLB proceedings. Most likely, the Plaintiffs wish to develop the same argument the Union attempted before the NRLB (which was rejected by the NLRB when it declined to move forward with the charge against Fox Holdings, *see* Schorr Aff., Exs. A-B). The Union argued that Fox Holdings' conduct amounted to assent to collective bargaining agreements but the NLRB dismissed for lack of evidence.

The failure to allege facts in support of the claim that Fox Holdings assented by its conduct is purposeful. The Plaintiffs know that no collective bargaining agreement was executed by Fox Holdings. They know that Fox Holdings did not assume any contractual liability of Williams Restoration (even if Williams had such a liability). And they know that the NRLB already rejected the other means by which they want to argue that Fox Holdings has obligations to pay benefits into the Plaintiff-funds under the collective bargaining agreement—adoption by

---

[1] *See Pension Fund v. Wasatch Front Elect. & Constr., LLC*, No. 2:09-CV-0632, 2012 U.S. Dist. LEXIS 80072, *11-12 (D. Utah, Jun. 8, 2012) (finding Union and its pension fund, the plaintiff, were in privity and treated as the same party for purposes of claim preclusion analysis).

conduct. Presumably, the Plaintiffs have not alleged facts in support of adoption by conduct because they lack a good faith basis to do so. That failure, however, should be fatal to their claims against Fox Holdings and it should be dismissed from this matter with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Fox Holdings, Inc. respectfully requests that this Court sustains the motion to dismiss and request take judicial notice, enters an order dismissing the claims set forth in the First Amended Complaint against Fox Holdings, Inc. with prejudice and dismissing Fox Holdings, Inc. from these proceedings, and for any further relief the Court deems just and appropriate.

Dated March 22, 2017.

FOX HOLDINGS INC., Defendant,

By:   /s/ *Bonnie M. Boryca*
      Bonnie M. Boryca, Kan. Bar. No. 24635
      ERICKSON | SEDERSTROM, P.C.
      10330 Regency Parkway Drive
      Omaha, NE 68114
      (402) 397-2200
      (402) 390-7137 Fax
      boryca@eslaw.com
      Attorneys for Fox Holdings, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 22, 2017, a true and correct copy of the above and foregoing Memorandum in Support of Motion to Dismiss and Request to Take Judicial Notice was filed with the Court using the CM/ECF system, which will send electronic notification and link to the filing to all counsel of record.

/s/ *Bonnie M. Boryca*