IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BAC LOCAL UNION 15 WELFARE FUND, ET AL. | CASE NO: 2:16-cv-2242-JTM-GEB |
| Plaintiffs, | |
| v. | **BRIEF IN SUPPORT OF FOX HOLDINGS INC.'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER TO ADD CROSS-CLAIM** |
| WILLIAMS RESTORATION COMPANY, INC., | |
| and | |
| FOX HOLDINGS, INC., | |
| Defendants. | |

Defendant Fox Holdings Inc. submits the following Brief in Support of its Motion for Leave to File Second Amended Answer to Add Cross-Claim.

## INTRODUCTION

Plaintiffs are eight welfare, pension, or training funds of the Bricklayers and Allied Craftworkers Union Local No. 15. Plaintiffs allege claims arising under ERISA against Williams Restoration Company, Inc. and Fox Holdings, Inc. Fox Holdings filed its Motion for Leave to File Second Amended Answer to assert a cross-claim against Williams Restoration Company. The cross-claim Fox Holdings wishes to assert includes claims of fraudulent and negligent misrepresentation, fraudulent concealment, breach of contract and indemnification, and contribution.

## STATEMENT OF THE MATTER BEFORE THE COURT

Plaintiffs have alleged violations of ERISA against the Defendants and, more specifically, that Fox Holdings is liable for the ERISA violations because it is a successor to

liabilities of Williams Restoration. Fox Holdings has moved this Court for an order allowing it to amend its Answer to allege a cross-claim against Williams Restoration based on Williams Restorations' breach of contract and concealment or misrepresentation of the facts prior to closing of the asset purchase agreement between the two companies.

## PROCEDURAL HISTORY

1. Plaintiffs filed their original Complaint on April 13, 2016. Williams Restoration Company was the only named Defendant. (Doc. #1).

2. Williams Restoration answered on August 15, 2016. (Doc. #8).

3. Initial disclosures were served and discovery was conducted, including Plaintiffs' expert designation. (Doc. #14, 16, 17, 20).

4. Plaintiffs filed for leave to file their First Amended Complaint, to add Fox Holdings as a Defendant on January 23, 2017. (Doc. #22). Williams Restoration did not oppose the motion to amend to add Fox Holdings. (Doc. #28).

5. The Court allowed the amendment and the First Amended Complaint was filed on February 8, 2017. (Doc. #30).

6. Fox Holdings moved to dismiss on March 22, 2017. (Doc. #35).

7. The District Court denied the motion to dismiss by memorandum and order on July 17, 2017. (Doc. #44).

8. Fox Holdings answered on July 31, 2017, and amended its answer on August 21, 2017. (Doc. #48, 59).

9. The parties then began written discovery. Williams Restoration and the Plaintiffs responded to Fox Holdings' written discovery on November 30, 2017. (Doc. #67, 68).

10. Plaintiff Craig Hydeman's deposition was taken by Fox Holdings on December 5, 2017. (Doc. #60).

11. Jeff Williams' deposition was taken by Fox Holdings on December 8, 2017. (Doc. #61).

12. Fox Holdings issued document subpoenas to the Bricklayers International Union and the National Labor Relations Board on December 14 and 15, 2017. (See Doc. #88-89, Notices of Intent).

13. The Plaintiffs issued a document subpoena to Sunbelt Business Advisors at the end of December, 2017. (Doc. #72, Notice of Intent).

14. The depositions of Linda Roberson, Jordan Fox, and Richard Roberson were taken by the Plaintiffs on January 10 and January 19, 2018. (Doc. #76, 77, 82).

15. NLRB documents were received on February 5, 2018. (Boryca Aff. Ex. A). Among these documents was the affidavit of Jeff Williams. (*Id.*).

16. The deposition of Jared Skaff was taken on March 1, 2018 pursuant to subpoena by Fox Holdings. (Doc. #84).

17. The deposition of Andrew Foxhoven was taken on March 28, 2018 pursuant to subpoena by the Plaintiffs. (Doc. #87). A second document subpoena was issued to Mr. Foxhoven and Sunbelt earlier in March, 2018. (Doc. #86).

18. Written discovery and supplementation of document production have continued throughout 2018 to date. Extensions of time to respond to discovery were requested by the parties through joint stipulation or unopposed motion and granted. (E.g., Doc. #75, 79, 90).

19. On June 13, 2018, Williams Restoration filed a Request for Telephonic Scheduling Status Conference. (Doc. #92). In the request, Williams represented that it was

"currently engaged in settlement discussions with Plaintiffs to see if a resolution outside of litigation may be reached." (*Id.* ¶3). In light of those discussions, Williams requested relief from upcoming discovery, expert and pretrial deadlines. (*Id.* ¶¶4-5).

20. Filing #92 made no mention of Fox Holdings, and, as its counsel represented during status conferences with this Court, receipt of that filing was the first time Fox Holdings was made aware of any settlement discussions occurring between Williams Restoration and the Plaintiffs. While Fox Holdings and the Plaintiffs had spoken in very general terms about possible mediation, it was with the understanding that the Plaintiffs' audits would be needed so they could make a pre-mediation demand and that Fox Holdings may prefer to have its motion for summary judgment on successor liability under advisement.

21. The Court scheduled a status conference, which was held by telephone on June 18, 2018. At the conference, the Court stayed all deadlines so the parties could discuss whether to mediate. During the conference, Williams Restoration represented that it was a dying company that had only this litigation to resolve before it would be dissolved.

22. The Court reconvened the parties by phone on July 18, 2018, during which the Court set forth new deadlines and a new trial date for this matter. Fox Holdings represented to the Court that Williams Restoration's reference to its own settlement had caused Fox Holdings to immediately evaluate whether it ought to bring a cross-claim against Williams within these proceedings. It already had been planning to initiate a separate suit against Williams Restoration based upon facts developed during discovery, to be noted below, to file in Nebraska state court before expiration of the statute of limitations. Because of the now-revealed fact that Williams Restoration was having private settlement discussions with the Plaintiffs and perceived a way to

get out of this matter and leave Fox Holdings in as sole defendant, Fox Holdings has good reasons to ask for leave to assert its claims as a cross-claim against Williams in this action.

23. The Court set a deadline of July 27, 2018 for Fox Holdings to seek leave to amend its answer, and it has complied with that deadline. (Doc. #103, p.2).

## STATEMENT OF RELEVANT FACTS

### A. Factual Allegations

24. Fox Holdings is a Nebraska corporation, having filed its articles of incorporation on September 18, 2014. It conducts its business in Nebraska and the Midwest, which consists of commercial and industrial waterproofing and concrete and masonry restoration. (Proposed Cross-Claim, ¶ 1).

25. Fox Holdings acquired certain assets of co-defendant Williams Restoration via an asset sale that closed on November 7, 2014. (Proposed Cross-Claim, ¶ 4).

26. Williams Restoration's former owner, Jeff Williams, negotiated the asset sale terms with Fox Holdings' Jordan Fox, Dickie Roberson, and Linda Roberson. Sunbelt Business Brokers, out of Omaha, Nebraska, brokered the transaction. (*Id.* ¶ 2).

27. Fox Holdings, via Mr. Fox and Mr. and Mrs. Roberson, held multiple meetings with Sunbelt and Jeff Williams regarding terms of the asset sale. In September or early October 2014, at one such meeting, Jeff Williams told them that his company had two or three employees who were members of a union but that his company was a non-union company. He said Williams Restoration did not have any contract with any union. (*Id.* ¶ 9).

28. The asset sale closed on November 7, 2014. Jeff Williams had agreed to cooperate in the transition of ownership and he met the owners of Fox Holdings at the

company's new premises to communicate the transition to employees on November 10 and 11, 2014. (*Id.* ¶¶ 15-16).

29. The Plaintiffs have alleged that Fox Holdings is a successor to Williams Restoration and liable for Williams' contractual obligation to the union and the union-funds as a successor. The Plaintiffs also seem to allege that Fox Holdings is liable for contributions that Williams should have made during its ownership of the company, and, vice versa, that Williams Restoration is jointly and severally liable for liability found against Fox Holdings for contributions that should have been made after the business was purchased by it. (Doc. #30, ¶ 13).

### B. Facts Developed During Discovery in Support of Cross-Claim

30. Jeff Williams' deposition was taken on December 8, 2017. This was taken before Jeff Williams' affidavit was received from the NLRB (on February 5, 2018, see Boryca Aff. Ex. A), and so without the benefit of his prior statement under oath.

31. At Mr. Williams' deposition, the following was learned:

   a. Mr. Williams was concerned about withdrawal liability his company would have by selling to Fox and ceasing payments into the funds. He had these concerns in the weeks before he sold his business to Fox and questioned union representative Jared Skaff and Craig Hydeman about them. He ultimately was convinced that withdrawal liability was not a concern. (Williams Dep. 21:5 – 22:23).

   b. Mr. Williams claimed to have talked with his business sales brokers at Sunbelt about his company's relationship with the local union. (*Id.* 26:23 – 27:22).

   c. He believes he would have informed the broker and Fox that his company was part union, part non-union. (*Id.* 28:2 – 6).

d. Union relationships did not come up in negotiations to sell the business until he saw the first draft of the asset purchase agreement sent by the broker. It had a term about unions that he had the broker change. (*Id.* 28:7 - 19).

e. Mr. Williams testified that he informed Fox that he did not have a copy of his executed contract with the local union. He made them aware that his company had union member employees, and "would have had a contract." (*Id.* 32:5 - 13).

f. About a week after selling to Fox, Mr. Williams talked with Jared Skaff, the union's field representative, to not push Fox into signing a union contract right away. (*Id.* 39:1 - 7).

g. He also told Fox that having some union employees was not a big deal. (*Id.* 41:8 - 16).Yet, he never made them aware of the contributions he made to the union-funds on behalf of those employees before the business sale closed. (*Id.* 28:15 – 19, 41:17 - 21).

h. He concedes he never provided a signed, filled in contract between Williams Restoration and a union to Fox Holdings. (*Id.* 49:1 - 15). But he claims there was a signed contract between his company and the union for the relevant timeframe. (*Id.* 73:3 – 25).

i. After this lawsuit was filed but before Fox Holdings was a party, Mr. Williams contacted Sunbelt to obtain an email in which he forwarded to the Sunbelt broker a blank, unsigned contract shortly before the sale closed, as if he was anticipating Fox Holdings making the precise claims it now is against him or his company. (*Id.* 45:15 – 47:11).

32. In February this year, documents from the NLRB were received after an information request. Subpoenas had been issued to it but rather than comply, the agency referred to regulations that permit information requests for litigation purposes. Jeff Williams' affidavit was produced for the first time to Fox Holdings within the NLRB's response, in which it was discovered:

   a. Mr. Williams states that he paid union fringe benefits for the 18 years he owned Williams Restoration. (Boryca Aff., Ex. A, Williams Aff. p. 3, l. 4).

   b. He further claimed to have had several discussions with Fox Holdings about "whether Williams was a Union company and that we had a contract with the Union." (*Id.* at 5, l. 4 - 5).

   c. That was after he accepted their offer to purchase, but before closing, he claims. (*Id.* at 5, l. 5 - 6). He further said he had the union's representative send Fox Holdings a copy of the contract. (*Id.* at 6, l. 7 - 8). He said he told Fox Holdings he had signed a contract but did not have a copy of the signed version. (*Id.* at 6, l. 10 - 11).

   d. He further stated that Fox Holdings knew there was a contract but that "They didn't understand it. They didn't understand the workings of it. They didn't know if that was a benefit to them or a detriment." (*Id.* at 7, l. 6 - 8). He acknowledged that the asset purchase agreement does not say anything about contributions to the funds. (*Id.* at 7, l. 13 - 14).

33. In sum, not until Mr. Williams was deposed and his prior statement under oath was reviewed, did Fox Holdings learn what his alleged recollection of the events leading up to the sale of his company in comparison to their own very different recollection.[1]

34. In the deposition of Andrew Foxhoven, agent of Sunbelt Business Brokers, the following was learned:

   a. Mr. Foxhoven testified he did not ever discuss collective bargaining or union status with Jeff Williams. (Foxhoven Dep. 18:8 – 12).

   b. Mr. Foxhoven did not recall ever asking Mr. Williams for any union contract. (*Id.* 34:20 – 25).

35. In the deposition of Jared Skaff, the field representative for the union at the time of the business sale in 2014, the following was learned:

   a. Mr. Skaff claimed that Williams Restoration had historically employed non-union allied craftworkers. (Skaff Dep. 16:3 - 12). He knew Jeff Williams was a union member himself. (*Id.* 33:23 - 24).

   b. In the summer of 2014, Mr. Skaff urged Mr. Williams to sign up several of Williams Restoration's non-union employees to be members of the Bricklayers and Allied Craftworkers local union. (*Id.* 16:21 – 17:10). Mr. Skaff said that Williams signed up about 6 or 7 new union members at that time. (*Id.*). These were caulkers and tuckers (considered to be craftworkers, not bricklayers), and Williams Restoration began paying union benefit contributions on their account immediately at the time of their sign-up. (*Id.* 67:7 - 24).

---

[1] Counsel for Fox Holdings notes that discussions did occur with Williams' counsel about Mr. Williams possibly making statements in an affidavit about what he recalled, but he ultimately declined to do that. As a result, his deposition had to be taken, which is the first point at which his position was made known. (Boryca Aff. ¶¶ 8 – 9).

c. Mr. Skaff had phone calls with Mr. Williams in about October of 2014, in which Mr. Williams wanted assurance that he could avoid withdrawal liability claims from the benefit and pension funds if he sold his company through an asset sale. (*Id.* 22:7 – 14, 28:6 – 29:17).

d. Mr. Skaff testified that Mr. Williams had told them at that time before he closed the sale to Fox Holdings, that he had talked with Fox Holdings about staying affiliated with the union and urged them to remain that way. (*Id.* 30:23 – 31:12).

e. The local union office in Omaha had a notebook of copies of all signed union contracts with all contractors in the Omaha area. (*Id.* 6:11 – 23).

f. Mr. Skaff visited Fox Holdings after it purchased Williams Restoration and presented them with a blank union contract so its owners would know what they would be getting into if they became a union signatory. (*Id.* 65:14 – 25).

### C. Anticipated Scope of Future Discovery on Cross-Claim

36. Fox Holdings has completed most or all discovery that will be needed to prove liability for its Cross-Claim. The exception may be regarding damages and some follow up written discovery requests to Williams.

37. Williams Restoration has been represented by counsel and appeared at all depositions taken in this matter to date. Thus, it has had the opportunity to develop evidence to defend itself. Regardless, the court has entered a discovery deadline of November 30, 2018, which will allow the parties to conduct any additional discovery on the Cross-Claim that may be needed.

## QUESTIONS PRESENTED

1. Whether new facts discovered after the filing of Defendant Fox Holdings' answer warrant an amendment to the answer to allow a cross-claim against Defendant Williams Restoration.

2. Whether any party will be prejudiced by the filing of an amended answer to allege a cross-claim against Williams Restoration.

3. Whether justice requires this Court to grant leave to Fox Holdings to file a cross-claim against Williams Restoration.

## ARGUMENT & AUTHORITIES

Fox Holdings Inc. moves this Court for an order allowing it to amend its answer to assert a cross-claim against Williams Restoration Company. Leave to amend should be "freely given when justice so requires." Federal Rule of Civil Procedure 15(2). "[T]his mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Justice requires leave to amend in this instance because Fox Holdings has moved in advance of the deadline set by the Court to move to amend the pleadings (of July 27, 2018), Fox Holdings has presented newly-discovered evidence from discovery that supports its Cross-Claim, and the matter was stayed at the request of co-defendant Williams Restoration on its representation that it may settle with the Plaintiffs, creating urgency in Fox Holdings assertion of its permissive cross-claim. While the claims could be brought in a separate state court action, the interests of judicial economy and Williams Restoration's representation that it is a "dying" company and would prefer to be settled out of this case, justify allowing Fox Holdings to bring its claims against Williams in this case.

When determining whether a motion to amend should be granted, courts consider "whether the amendment will result in undue prejudice, whether the request was unduly and

inextricably delayed, was offered in good faith, or [if] the party had sufficient opportunity to state a claim and failed." *Koch v. Koch Industries,* 127 F.R.D. 206, 209 (D. Kan. 1989) (quoting *State Distributors Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir. 1984)) Here, the procedural history and the facts learned from discovery establish that no parties will suffer undue prejudice by allowing this cross-claim. There will be time for Williams Restoration to conduct its own discovery to defend itself, if it determines it ought to do so. Further, the claims should come as no surprise to Williams Restoration. Its owner was gathering evidence to defend against such claims upon the filing of this matter against it. Fox Holdings took its owner's deposition and served discovery upon it as a co-defendant. Williams Restoration has known Fox Holdings' view of this case and its denial of successor liability since Fox moved to dismiss. It cannot claim to be surprised or prejudiced by permitting the Cross-Claim at this juncture.

The procedural timeline set forth above shows that Fox Holdings has diligently pursued discovery. It has identified newly-discovered evidence that supports its cross-claim. Moreover, the posture of this case changed when Williams Restoration announced settlement with the Plaintiffs was likely. It requested and received a stay of deadlines in the case. Thus, the case was paused, and now new deadlines have been set, making now a reasonable time to insert a cross-claim into this action.

If the Court disallows the Cross-Claim, Fox Holdings will be required to file a new action against Williams Restoration. It will have to file such an action in Nebraska state court as the claims are brought under Nebraska law between the two Nebraska companies. Fox Holdings prefers to bring the claims in this matter to save time and costs of litigating in one rather than two separate forums on claims that arise from the same occurrence. Furthermore, Williams Restoration's recent filings and communications to the Court about settlement indicate that

Williams is trying to reach an independent settlement with the Plaintiffs to be dismissed from this action, thereby forcing Fox Holdings to defend this matter as the sole defendant.

"The savings of time and effort gained through consolidation [of claims in one case] must be balanced against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions." *Waste Distillation Technology Inc. v. Pan American Resources*, 775 F. Supp. 759, 761 (D. Del. 1991). The allegations in the Cross-Claim against Williams Restoration are part of the same case or controversy and arise from the same transaction as the Plaintiffs' claims against both defendants. It makes sense to adjudicate these claims together in one case, rather than separately in different forums and along different timelines.

Federal Rule of Civil Procedure 13 permits a defendant to assert a cross-claim in its answer. All cross-claims are permissive under federal law, and may be filed if they arise from the same transaction or occurrence that is the subject matter of the claims asserted by the plaintiff. *E.g., Spicer v. New Image Intern., Inc.,* No. 04-2184-KHV-DJW, 2006 WL 3791972, at *2 (D. Kan. Dec. 26, 2006). A cross-claim can be contingent on liability being found against the cross-claimant: "The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed. R. Civ. P. 13(g). This means that a cross-claim need not necessarily be mature at the time of its filing. *See, e.g., Glaziers and Glassworkers Union Loc. 252 Ann. Fund v. Newbridge Securities, Inc.,* 823 F. Supp. 1188, 1190 (E.D. Pa. 1993) (citing 6 Wright, Miller & Kane, *Fed. Prac. & Proc.,* § 1431)). As a result, even though the extent of Williams Restoration's liability to Fox Holdings cannot be determined until and only if Fox Holdings is found liable under the Plaintiffs'

successor liability theory, it is still appropriate to permit Fox Holdings to assert the cross-claims based on that contingent liability now.

Last, Fox Holdings has inserted a demand for jury trial in its proposed Cross-Claim. Trial was re-scheduled at the July 18 conference call to September 3, 2019. If trial needed to move to accommodate a jury panel schedule, Fox Holdings has no objection to that and, for the reasons noted above, does not believe that any such change would prejudice the other parties. Fox Holdings believes that its Cross-Claim may require an additional day of trial, if that, because testimony on the Cross-Claim will substantially overlap with testimony to defend the successor liability claim of the Plaintiffs.

## CONCLUSION

A party should be given leave of Court to amend the pleadings when justice so requires. Justice requires that Fox Holdings be allowed the opportunity to bring its claims against Williams Restorations in this action. No party can point to actual prejudice nor is there any indication that allowing the Cross-Claim will result in any substantial delay of these proceedings. Instead, the parties will be able to adjudicate all related claims in one action, preserving the parties' time and resources, as well as that of the court system. For these reasons, Fox Holdings respectfully requests that it be given leave to file its Second Amended Answer with Cross-Claim.

Dated July 27, 2018.

FOX HOLDINGS, INC., Defendant,

By: /s/ *Bonnie M. Boryca*
Bonnie M. Boryca, Kansas Bar #24635
ERICKSON | SEDERSTROM, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
(402) 390-7137 Fax
boryca@eslaw.com
Attorneys for Fox Holdings, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2018, a true and correct copy of the above and foregoing Brief in Support of Motion for Leave was filed with the Court using the CM/ECF system, which will send electronic notification and link to the filing to all counsel of record.

*/s/ Bonnie M. Boryca*