IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BAC LOCAL UNION 15 WELFARE FUND, et al., <br><br>  Plaintiffs <br><br> v. <br><br> WILLIAMS RESTORATION COMPANY, INC. and FOX HOLDINGS, INC., <br><br>  Defendants. | Case No. 2:16-CV-2242-JTM-JPO <br><br><br> WILLIAM RESTORATION COMPANY, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS |

Nearly 18 months after being named a defendant in this lawsuit, Fox Holdings, Inc. ("FHI") has now asserted a permissive cross-claim against Williams Restoration Company, Inc. ("Williams Restoration") that purports to assert a host of claims under Nebraska law and includes a jury demand in what has been thoroughly litigated as an ERISA fringe benefit contribution suit. *Compare* ECF No. 30 *with* ECF No. 115.

FHI's claims fail because the Asset Purchase Agreement—the key document that "supports" FHI's claims—also includes an integration clause that, by its terms, preclude assertion of many of the claims FHI now seeks to allege. The claims also fail because, as this Court has already explicitly ruled, "Section 3.10 of the Asset Purchase Agreement between [FHI] and [Williams Restoration] acknowledged the CBA between [Williams Restoration] and BAC Local Union 15." ECF No. 44 p. 4.

**1.  Background**

FHI has alleged a number of state-law claims against Williams Restoration. ECF No. 115. It is undisputed that in November 2014, Williams Restoration and FHI executed an Asset Purchase Agreement, the terms of which govern the relationship between the two parties.

Pursuant to Fed. R. Civ. P. 12(b)(6), Williams Restoration has moved to dismiss the cross-claim for failure to state a claim for which relief may be granted.

Plaintiffs filed the above-captioned lawsuit against Williams Restoration on April 13, 2016. *See* ECF No. 1. On January 23, 2017, Plaintiffs filed a Motion for Leave to file an Amended Complaint, which named FHI as a defendant. *See* ECF No. 23-24. On February 7, 2017, the Court granted Plaintiffs' Motion for Leave to file the Amended Complaint. *See* ECF No. 29.

On February 8, 2017, Plaintiffs filed the Amended Complaint, which was served on FHI on February 15, 2017. *See* ECF No. 30-31. FHI filed a Motion to Dismiss on March 22, 2017, in support of which it offered the Affidavit of Jordan Fox that authenticated the Asset Purchase Agreement between FHI and Williams Restoration. *See* ECF Nos. 35 and 35-2. In July 2017, the Court denied the Motion to Dismiss and found that Plaintiffs stated a plausible claim for relief as against FHI. *See* ECF No. 44. FHI filed an Answer on July 31, 2017, and then filed an Amended Answer on August 21, 2017. *See* ECF Nos. 48, 59. FHI filed a Second Amended Answer on October 11, 2018, which asserted a permissive cross-claim against Williams Restoration that is subject to the pending Motion. *See* ECF No. 115.

In November 2014, FHI and Williams Restoration executed an Asset Purchase Agreement. *See* ECF No. 115 at p. 8, ¶ 4. Sunbelt Business Advisors was retained to assist with the sale of assets from Williams Restoration to FHI. *See id*. at ¶ 5. In advance of execution of the Asset Purchase Agreement, in a series of meetings, Williams Restoration told FHI that Williams Restoration had union employees. *Id*. at ¶ 9.

FHI admits that it "considered" this information and wanted to continue negotiating the asset sale. *Id*. at ¶ 10.

In October 2014, prior to execution of the Asset Purchase Agreement, Williams Restoration informed FHI that Williams Restoration had past contracts with the union. *Id*. at p. 8-9, ¶ 11. Williams Restoration revised the Asset Purchas Agreement's language, at § 3.10, to reflect the status of Williams Restoration's collective bargaining obligations. *See id*. at ¶ 13. During the course of negotiations of the purchase of Williams Restoration by FHI, in October 2014, FHI became aware of Williams Restoration's employment of both union and non-union employees. *See id*. at 8-9. Throughout its negotiations with FHI, Williams Restoration consistently represented that it had union employees on payroll and that Williams Restoration had signed agreements with the union, but that Williams Restoration did not have an executed copy of such signed agreement with the union in its files. *See id*. Union matters were further addressed in § 3.10 of the Asset Purchase Agreement, which was signed on November 6, 2014. ECF No. 35-2.

**2.    Questions Presented**

    A.    Whether FHI has alleged plausible claims for relief against Williams Restoration.

    B.    Whether the Court may take judicial notice of the Asset Purchase Agreement, a document embraced by the cross-claim and judicially noticed on FHI's motion to dismiss, when considering Williams Restoration's Motion.[1]

**3.    Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But a complaint must also contain a

---

[1] FHI has previously stated that the Asset Purchase Agreement is "central" to this lawsuit and "its accuracy cannot be reasonably questioned." ECF No. 35-4 at p. 8; *see also* ECF No. 44 (Court's Memorandum and Order on FHI's Motion to Dismiss, which took judicial notice of the Asset Purchase Agreement).

"'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n. 3. (2007) (quoting Fed.R.Civ.P. 8(a)(2)). While the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff," the Court also looks for "plausibility in th[e] complaint." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal citations omitted).

Notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado, supra*, 493 F.3d at 1215 (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The Court may also take judicial notice of public records, and matters pending on its own docket. Fed. R. Evid. 201(a), (b).

**4.     Argument**

    **A.     The Asset Purchase Agreement's Integration Clause and the Parol Evidence Rule Bar FHI's cross-claim.**

The Asset Purchase Agreement specifically states that it "shall be construed in accordance with and governed by the laws of the State of Nebraska, without giving effect to the principles of conflicts of laws thereof." ECF No. 35-2 at § 9.7. Under Nebraska law, "when the parties have executed a completely integrated written document purporting to express the terms of their agreement, the parol evidence rule renders ineffective any evidence of a prior or contemporaneous oral agreement which adds to, alters, varies, or contradicts the terms of the written document." *Rowe v. Allely*, 507 N.W.2d 293, 296 (Neb. 1993) (internal citations omitted). Williams Restoration and FHI expressly agreed that the Asset Purchase Agreement "sets forth the entire agreement of the parties hereto concerning the subject matter of this [Asset

Purchase] Agreement." ECF No. 35-2 at § 9.8. Where negotiations between the parties result in an agreement which is reduced to writing, the written agreement is the only competent evidence of the contract in the absence of fraud, mistake, or ambiguity. *Rowe*, 507 N.W.2d at 296.

FHI's allegations of statements allegedly made by Williams Restoration during negotiations of the Asset Purchase Agreement are prohibited and the claims of negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment fail as a matter of law. Any evidence of statements purportedly made by Williams Restoration during the negotiations of the Asset Purchase Agreement that vary the terms of the written contract are inadmissible and cannot be the basis for a plausible claim for relief.

### (1) *Fraud and Negligent Misrepresentation*

To recover on a fraud or negligent misrepresentation claim, FHI must show that it reasonably relied on the allegedly false representation. *Cullinane v. Beverly Enters.-Neb., Inc.*, 912 N.W.2d 774, 793 (Neb. 2018); *see also Lucky 7, L.L.C. v. THT Realty, L.L.C.*, 775 N.W.2d 671, 674 (Neb. 2009) (in both negligent and fraudulent misrepresentation cases, "whether plaintiff exercised ordinary prudence is relevant to whether plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands"). FHI cannot make such a showing because its "reliance is wholly unreasonable, *given the facts open to the plaintiff's observation* and his or her own skill or experience." *Id.* (emphasis added). In this case, for example, FHI was presented financial statements, was on notice of the CBA prior to closing, knew that Williams Restoration had union members on the payroll, and yet now is attempting to ignore all of those facts and to impermissibly shift liability from FHI to Williams Restoration.

Based on these undisputed facts, FHI cannot claim that it reasonably relied on any allegedly false statement. FHI was aware that it was purchasing a company with union

employees that was a party to a union contract ECF No. 35-2; ECF No. 44 at p. 4. The Asset Purchase Agreement includes a section titled "Organized Labor Matters" that contains Williams Restoration's actual representations and the union membership of its employees. *See* ECF No. 35-2 at § 3.10. Williams Restoration and FHI reduced their agreement to a fully integrated writing that specifically addressed organized labor matters. ECF No. 35-2 at § 3.10. FHI bases its cross-claims on alleged statements made by Williams Restoration prior to the execution of the Asset Purchase Agreement, but the statements relied upon directly contradict the representations that Williams Restoration made. *Id*. FHI's cross-claims for fraudulent misrepresentation and negligent misrepresentation fail as a matter of law because FHI executed a fully integrated agreement, which set forth the rights, obligations, and representations of the parties.

To the extent FHI seeks to assert claims for fraudulent misrepresentation, the parol evidence rule is inapplicable as FHI is not claiming that the Asset Purchase Agreement is unenforceable or is not arguing that the Asset Purchase Agreement is void. *See Soomekh Oriental Rugs v. Target Corp.*, 38 F. App'x 351, 352 (8th Cir. 2002) (parol evidence rule barred any evidence of Dayton's alleged oral promise because such evidence contradicted the parties' written contract and the fraud exception to the parol evidence rule was inapplicable, since Soomekh did not claim that the contract was unenforceable or argue that the contract was void); *see also Villines v. Gen. Motors Corp.*, 324 F.3d 948, 952 (8th Cir. 2003) ( "[w]hen a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible.").

Nebraska courts analyze three factors to determine if a writing is completely integrated: first, whether the writing is complete on its face; second, whether the proffered evidence varies

or contradicts the writing; and third, whether the parties intended the writing to cover a certain subject of their negotiations. *Rowe*, 507 N.W.2d at 296. First, the Asset Purchase Agreement is complete on its face. ECF No. 35-2. Second, the cross-claims vary or contradict the express representations Williams Restoration made in the Asset Purchase Agreement regarding organized labor matters. *Id*. at § 3.10. Third, it is clear that the Asset Purchase Agreement intended to cover that Williams Restoration employed union members and had a collective bargaining agreement with the union. *See id*.

Claims for fraudulent misrepresentation and fraudulent concealment fail when a buyer had access to a seller's books and records and where the material facts at issue were within the buyer's reasonably diligent attention, observation, and judgment. *RSG, Inc. v. Sidump'r Trailer Co.,* No. 8:06CV507, 2011 WL 98310, at *17 (D. Neb. Jan. 10, 2011). Here, FHI specifically acknowledged that it had access to William Restoration's books and records, including various financial statements. ECF No. 35-2 at § 3.1. Based on the undisputed facts, FHI's cross claim fails as a matter of law because the material facts were known to FHI and FHI had access to Williams Restoration's books and records prior to execution of the Asset Purchase Agreement.

### (2) *Fraudulent Concealment*

To prove fraudulent concealment, a plaintiff must prove that the defendant concealed a material fact. *See Zawaideh v. Nebraska Dep't of Health & Human Servs. Regulation & Licensure*, 792 N.W.2d 484, 495 (Neb. 2011), *disapproved of on other grounds by State v. Boche*, 885 N.W.2d 523 (Neb. 2016). As set forth above, only FHI has concealed information in this case. The cross-claim asserted wholly fail to disclose to the Court that Williams Restoration made a full disclosure to FHI regarding the union contract well before FHI closed on the purchase of Williams Restoration. In fact, FHI's selective recitation of the facts and information known to FHI prior to closing of the Asset Purchase Agreement is the epitome of artful pleading

to avoid dismissal under Rule 12(b)(6). The Court has already recognized that FHI had notice of the collective bargaining agreement. ECF No. 44 at p. 4 ("Section 3.10 of the Asset Purchase Agreement between [FHI] and [Williams Restoration] acknowledged the CBA between [Williams Restoration] and BAC Local Union 15."). FHI's fraudulent concealment cross-claim fails as a matter of law.

B.  **FHI's Claims for Contribution and Indemnification Fails as a Matter of Law.**

The Asset Purchase Agreement not only represents Williams Restoration's status as a union company with union employees, but it contains an indemnification provision ***that holds FHI responsible*** for "any action arising after Closing." *See* ECF No. 35-2 at § 8.2. "Closing," under the Asset Purchase Agreement, occurred on or about November 6, 2014 and because Williams Restoration provided information relating to the CBA, it satisfied its obligations of disclosure, and thus, FHI can never prove a "breach" of the Asset Purchase Agreement or recover "indemnity" or "contribution" for claims it contractually agreed to assume. *See Oddo v. Speedway Scaffold Co.*, 443 N.W.2d 596, 602 (Neb. 1989) ("An indemnity agreement is a contract to be construed according to the principles generally applied in construction or interpretation of other contracts").

FHI's allegations in support of its contribution and indemnification claims not only run afoul of the plain language of the indemnification provision in the Asset Purchase Agreement, but FHI also fails as a matter of fact and law to establish any basis for making the allegations in the first place.

FHI's chief complaint is that it did not receive a "signed" CBA. *See e.g.* ECF No. 115 at ¶ 14. Well settled law on this issue, available before and after Closing to FHI and its lawyers, holds that no signature is required of an employer in order for the employer to be bound by the obligations of a collective bargaining agreement. *See, e.g., Wisc. Elec. Employees Health and*

*Welfare Plan v. KMS Elec., L.L.C*., No. 14.-cv-521, 2015 WL 4487072 *4 (E.D. Wis. July 23, 2015) ("[A] signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement"); *Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, (7th Cir. 2004) ("Moreover, section 320(c)(5)(B) [of the LMRA] does not require a signed agreement;" it merely requires a 'written' one" …. [T]he statute is satisfied by a written agreement to which an employer is bound, not a written agreement to which an employer is bound which also carries that employer's signature") (citations omitted). This is important because the Asset Purchase Agreement, like all contracts under Nebraska law, recognize that "the laws which subsist at the time and place of making the contract, and where it is to be performed, enter into and form part of it, as if they were expressly referred to or incorporated in its terms." *See Stoller v. State*, 105 N.W.2d 852, 858 (Neb. 1960).

As FHI has repeatedly represented to this Court, the terms of the Asset Purchase Agreement are key to its claims. The Asset Purchase Agreement does exclude certain liabilities from the sale. However, the excluded liabilities, as relates to employee benefits and fringe benefits, is limited to matters arising *before* the Effective Date (November 6, 2014) of the Asset Purchase Agreement ECF No. 35-2 at §1.4(h). By its very terms, the Asset Purchase Agreement shifts liability for employee benefits and fringe benefits to FHI for matters arising *after* the Effective Date.

To the extent that Plaintiffs are seeking unpaid fringe benefits from FHI for matters arising after the Effective Date of the Asset Purchase Agreement, those assets are not "excluded liabilities" and thus any liability remains with FHI, not Williams Restoration. Moreover, after closing, FHI picked up with the Plaintiff Funds where Williams Restoration left off, and began

making contributions to the Plaintiff Funds. This Court has already determined that the Plaintiff Funds have asserted a plausible claim for relief as against FHI. ECF No. 44. In doing so, the Court has reasoned that the Plaintiff Funds' Amended Complaint, which states that "[FHI] continued to employ bricklayers covered under the collective bargaining agreements and evidenced an intent to be bound by such agreements," asserted a plausible claim for successor liability. ECF No. 30 at ¶14; ECF No. 44 at p. 5.

Not only is this legally significant, but such a framework between buyer and seller is logically sensible as well. Once the asset sale was effective, FHI controlled the employees, the jobs taken, and the staffing of those jobs. FHI had the decision-making power. Williams Restoration had ceased all control of operations, and therefore cannot now be held liable under a contribution or indemnification theory for liabilities that FHI specifically assumed.

On top of FHI's failure to understand the law, it apparently failed to understand the facts it had at its disposal as well. One way courts hold employers to be bound to an agreement they did not sign is when an employer "manifests an intent to be bound to a collective bargaining agreement [ ] by regularly contributing to fringe benefit funds." *See Wisc. Elec. Employees Health and Welfare Plan*, 2015 WL 4487072 at *5. In this case, during the due diligence phase and prior to closing, Williams Restoration provided FHI with various financial statements. ECF No. 35-2 at § 3.10. Such financial statements delivered to FHI prior to closing "fairly present[ed] the financial condition in all material respects of the Business at the dates indicated and the results of operations and cash flows of the Seller for the period indicated in all material respects." ECF NO. 35-2 at § 3.1. Additionally, Williams Restoration only retained liabilities for employee benefits accrued or earned prior to Closing. *Id.* at § 5.2.

FHI's claim for indemnification is not supported by the terms of the Asset Purchase Agreement. As set forth above, FHI was on notice of Williams Restoration's union contracts and and § 3.10 of the Asset Purchase Agreement clearly provides notice of such arrangement—despite FHI's attempts to characterize § 3.10 as confusing or ambiguous. In fact, this Court has already stated that "Section 3.10 of the Asset Purchase Agreement between [FHI] and Williams [Restoration] acknowledged the CBA between Williams [Restoration] and the BAC Local Union 15." FHI's current allegations, that Williams Restoration breached the contract and thus owes FHI indemnification for the alleged breach, is not plausible as a matter of law based on this Court's previous statements concerning the notice that was clearly provided in § 3.10. As a matter of law, no breach of the Asset Purchase Agreement occurred, and thus FHI's contract and indemnification claim fails as a matter of law.

Moreover, FHI's contribution claim fails as a matter of law because FHI expressly assumed liability for employee benefits and fringe benefits to FHI for matters arising *after* the Effective Date. ECF No. 35-2 at §1.4(h). FHI seeks to enforce the Asset Purchase Agreement by its terms. In this Motion, Williams Restoration seeks to do the same. The Asset Purchase Agreement precludes the claim for contribution.

**5.     Conclusion**

Based on the foregoing, Williams Restoration Company, Inc. respectfully requests that the Court dismiss with prejudice the cross-claims asserted by Fox Holdings, Inc. against Williams Restoration Company, Inc.

Dated November 1, 2018.

WILLIAMS RESTORATION COMPANY,
INC., Defendant,

By: /s/ Phillip J.R. Zeeck
GREGORY M. BENTZ D. KAN. # 70358
PHILLIP J. R. ZEECK D. KAN. # 78493
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 753-1000
(816) 753-1536 (Fax)
gbentz@polsinelli.com
pzeeck@polsinelli.com

And

Patrice D. Ott, Neb. #24435
(admitted *pro hac vice*)
Michael C. Cox, Neb. #17588
(admitted *pro hac vice*)
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Patrice.ott@koleyjessen.com
Michael.Cox@koleyjessen.com

Attorneys for Defendant Williams Restoration Company.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Kansas using the CM/ECF system, which caused notice of such filing to be served upon all counsel of record.

/s/ Phillip J.R. Zeeck