*BAC LOCAL UNION 15 WELFARE FUND, et al. vs.*

*WILLIAMS RESTORATION, INC., et al.*

---

*DEPOSITION OF CRAIG STEPHEN HYDEMAN*

*December 05, 2017*

---



11880 College Blvd. • Suite 405• Overland Park, KS • 66210
800.748.7511 • 913.317.8800 • MetropolitanReporters.com

BAC LOCAL UNION 15 WELFARE FUND, et al. vs. WILLIAMS RESTORATION, INC., et al.

DEPOSITION OF CRAIG STEPHEN HYDEMAN
December 05, 2017

Page 3

```
1              IN THE UNITED STATES DISTRICT COURT
2                  FOR THE DISTRICT OF KANSAS
3
4   BAC LOCAL UNION 15 WELFARE
5   FUND, ET AL.,
6                  Plaintiffs,        No.
7   vs.                               2:16-cv-2242-
8   WILLIAMS RESTORATION COMPANY,     JTM-GEB
9   INC., and FOX HOLDINGS, INC.,
10                 Defendants.
11
12
13
14
15         DEPOSITION OF CRAIG STEPHEN HYDEMAN, a
16   Witness, taken on behalf of Defendant Fox Holdings,
17   Inc., before Sharon R. Larrick, CSR No. 767,
18   CCR No. 765, RMR, CRR, CRC, pursuant to Notice on the
19   5th of December, 2017, at the offices of Arnold,
20   Newbold, Winter & Jackson, P.C., 1100 Main Street,
21   Suite 2001, Kansas City, Missouri.
22
23
24
25
```

Page 4

```
1                         INDEX
2   WITNESS:                              PAGE
    CRAIG STEPHEN HYDEMAN
3       Examination by Ms. Boryca           4
        Examination by Mr. Sollars        112
4
5                       EXHIBITS
6   EXHIBIT                                          PAGE
    NUMBER      DESCRIPTION               IDENTIFIED
7   1      Confidential Witness Affidavit       11
           of Craig Hydeman
8
    2      Blank Agreement                      42
9
    3      Document describing bricklayer       61
10         training
11  4      2014 and 2013 Job List               67
12  5      7/10/13 Agreement between            71
           Williams Restoration and
13         Local No. 1
14  6      7/01/08 Agreement between            90
           Williams Restoration and
15         Local No. 1
16  7      6/06/11 Agreement between            90
           Williams Restoration and
17         Local No. 1
18  8      07/02/12 Agreement between           90
           Williams Restoration and
19         Local No. 1
20  9      5/4/15 letter to Jeffrey Williams    96
           from Craig Hydeman
21
    10     First Amended Complaint              98
22
    11     Plaintiff Funds' Objections         109
23         and Responses to Defendant Fox
           Holdings, Inc.'s First Set of
24         Interrogatories to Plaintiffs
25  NOTE:  Hydeman Deposition Exhibits 1 through 11 were
    attached to the original transcript.
```

Page 2

```
1                      APPEARANCES
2
3   APPEARING FOR THE PLAINTIFFS:
4       MR. BRADLEY J. SOLLARS
            ARNOLD, NEWBOLD, WINTER & JACKSON, P.C.
5           1100 Main Street
            Suite 2001
6           Kansas City, MO 64105
            816.581.4805
7           bjsollars@anwjpc.com
8
9   APPEARING FOR DEFENDANT FOX HOLDINGS, INC.:
10      MS. BONNIE M. BORYCA
            ERICKSON & SEDERSTROM, P.C.
11          10330 Regency Parkway Drive
            Omaha, NE  68114
12          402.397.2200
            boryca@eslaw.com
13
14
    APPEARING FOR DEFENDANT WILLIAMS RESTORATION COMPANY,
15  INC.:
16      MS. PATRICE D. OTT
            KOLEY JESSEN P.C., L.L.O.
17          1125 South 103rd Street
            Suite 800
18          Omaha, NE  68124
            402.390.9500
19          patrice.ott@koleyjessen.com
20
21
22
23
24
25
```

Page 4

```
1      (Deposition commenced at 10:59 a.m.)
2           CRAIG STEPHEN HYDEMAN,
3   being first duly sworn, testified under oath as
4   follows:
5                EXAMINATION
6   BY MS. BORYCA:
7      Q.   Please state your full name for the
8   record.
9      A.   Craig Stephen Hydeman.
10     Q.   And where do you live?
11     A.   5302 Newton, Overland Park, Kansas.
12     Q.   Are you originally from this area?
13     A.   Yes.
14     Q.   And how old are you, sir?
15     A.   57.
16     Q.   And what's the highest level of
17  education that you've obtained?
18     A.   I went through a couple of college
19  courses at a high school, just electronic repair,
20  that type of thing.
21     Q.   Okay.  College degree obtained or not?
22     A.   No.
23     Q.   Any type of trade school?
24     A.   Oh, yes.
25     Q.   Tell me about that, please.
```

11880 College Blvd., Suite 405
Overland Park, KS 66210
800.748.7511 ♦ 913.317.8800 ♦ FAX 913.317.8850

BAC LOCAL UNION 15 WELFARE FUND, et al. vs DEPOSITION OF CRAIG STEPHEN HYDEMAN
WILLIAMS RESTORATION, INC., et al.                        December 05, 2017

Page 17

1  make sure I understood. You don't keep an office in
2  Omaha; is that right?
3      A.   I do not.
4      Q.   All right. So Jared Skaff would relay
5  concerns to you; is that correct?
6      A.   Correct.
7      Q.   Did you hear directly of any concerns
8  from any employees of Williams Restoration prior to
9  this phone call you told me about with Jeff Williams?
10     A.   Prior to the phone call?
11     Q.   Yes.
12     A.   Not prior to the phone call.
13     Q.   Okay. Following the phone call did
14 you?
15     A.   I believe so from Doug --
16     Q.   Okay.
17     A.   -- and the father and son.
18     Q.   Did you hear from Jared Skaff prior to
19 that phone call with Jeff Williams?
20     A.   I think there was discussions about
21 what Jared was hearing with the sale of the company.
22     Q.   I'm trying to get at where you first
23 learned about the sale of the company. And if you
24 don't know, you can certainly tell me that.
25     A.   Yeah, I don't know the exact time, no,

Page 18

1  I don't.
2      Q.   And then following your phone call
3  with Jeff Williams that you've told me about, you
4  talked with Doug Tiefenthaler --
5      A.   Uh-huh.
6      Q.   -- correct?
7      A.   Uh-huh, correct. Sorry.
8      Q.   And then the father and son who worked
9  for Williams Restoration --
10     A.   Correct.
11     Q.   -- was that a phone call or was that
12 in person?
13     A.   That was in person.
14     Q.   In what context? At a meeting or
15 something else?
16     A.   No, came in the office. And I did
17 have phone calls with Doug as well. He did place
18 further phone calls with me. Not so much about -- he
19 was interested in opening his own business as well.
20     Q.   So when you met in person with Doug
21 and with the father and son, was that at the Omaha
22 office?
23     A.   Correct.
24     Q.   That must have been an occasion where
25 you were visiting Omaha then?

Page 19

1      A.   Correct.
2      Q.   How frequently does that happen?
3      A.   At that time, probably twice a month.
4      Q.   Has it since changed, I take it?
5      A.   Yes. Going better up there, so not
6  quite as frequently.
7      Q.   So can you paint a time frame on this?
8  And I can help you out if you don't remember off the
9  top of your head.
10     A.   I would say it was sometime after the
11 merger, which January of this year will be four years
12 ago. So I would say maybe March of 2014, somewhere
13 in there.
14     Q.   And so the merger you're talking about
15 is the merger of the Local No. 1 in Omaha with the
16 Local No. 15?
17     A.   Correct.
18     Q.   All right. And that occurred on
19 January 1st, 2014?
20     A.   Correct.
21     Q.   So you think that you were having a
22 conversation -- conversations about the sale of
23 Williams Restoration three months after that in 2014?
24     A.   I believe so, somewhere in that time
25 frame. I can't be a hundred percent sure four years

Page 20

1  ago.
2      Q.   Fair enough. The sale occurred in
3  November, 2014. Does that sound right to you?
4      A.   Yes, I think that does.
5      Q.   Okay. So if I tell you that, do you
6  still think you were hearing about the sale and
7  having discussions about that as far back as March,
8  2014?
9      A.   It could have been a little bit later
10 than March then. I think it was -- it could have
11 been a little bit later than March.
12     Q.   Okay. So you've told me --
13     A.   I'll say May, something like that. I
14 don't know.
15     Q.   Okay.
16     A.   Somewhere in that area.
17     Q.   So you've told me about -- you know,
18 you met Mr. Williams 20 or so years ago?
19     A.   Uh-huh.
20     Q.   And then around the time of the sale,
21 you had a phone call with him, correct?
22     A.   Correct.
23     Q.   So if I tell you that was November of
24 2014, does that help you in any way? Can you somehow
25 tie that to "Oh, it was around Christmastime" or "Oh,

BAC LOCAL UNION 15 WELFARE FUND, et al. vs.
WILLIAMS RESTORATION, INC., et al.

DEPOSITION OF CRAIG STEPHEN HYDEMAN
December 05, 2017

Page 97

1 Williams --
2       A.    Uh-huh.
3       Q.    -- on about May 14th, 2015.  Do you
4 remember that?
5       A.    I do.
6       Q.    Okay.  And do you remember -- in this
7 affidavit before the reference to the call, you say
8 "I sent information request to Jeff Williams"?
9       A.    Correct.
10      Q.    Do you think that this is what you're
11 referring to there?
12      A.    I believe so.
13      Q.    Okay.  And so this document that's in
14 Exhibit No. 9 is what prompted -- to your knowledge,
15 is what prompted the phone call from Jeff Williams?
16      A.    It could be.
17      Q.    Do you know, had he received this
18 before he called you, this letter that's in Exhibit
19 9?
20      A.    I don't recall.
21      Q.    In your phone call with Mr. Williams,
22 did you talk about contributions owed to the funds
23 that you're a trustee of?
24      A.    Contributions owed?  I don't recall
25 specifically contributions owed.

Page 98

1       Q.    Did you raise the issue of having to
2 pay any contributions to the funds at all during that
3 call?
4       A.    I think what I was -- the discussion
5 was of some of the items that were requested in the
6 letter.  But we did not discuss line item by line
7 item, no.
8       Q.    Okay.  Sure.  Did you discuss anything
9 with regard to what's listed here in No. 7, which is
10 accrued, but unpaid fringe benefit contributions for
11 hours worked by bargaining unit employees at
12 Williams?
13      A.    That's my recollection.
14            MS. BORYCA:  This is my last one.
15            (Deposition Exhibit No. 10 was marked
16 for identification.)
17 BY MS. BORYCA:
18      Q.    I'm going to hand you now what we've
19 marked as Exhibit No. 10.  And I trust that you've
20 seen that document before, correct?
21      A.    It's been some time.  Correct.
22      Q.    Can you flip it to page 3, please?
23 And then let's look at paragraph 6.  And this
24 references "Williams Restoration Company, Inc., was
25 bound to collective bargaining agreements with BAC

Page 99

1 Local Union No. 15."  That's an allegation you've
2 made in the lawsuit, right?
3       A.    Correct.
4       Q.    And then we looked at agreements with
5 Williams Restoration, Exhibits 8, 7, and 6, those are
6 expired now, correct?
7       A.    The dates are expired.  We have no
8 termination letters for any of those contracts.
9       Q.    Okay.  We looked at an agreement in
10 Exhibit No. 5.  Remember that's the one that had the
11 expiration date of May 31st, 2016.  So --
12      A.    Oh, yeah, correct.
13      Q.    -- 2016, right?
14      A.    Correct.
15      Q.    Is this the agreement that you're
16 talking about in paragraph 6 of the complaint, all of
17 these are in effect?
18      A.    This agreement here would be in
19 effect.
20      Q.    The most recent one in Exhibit No. 5?
21      A.    Right.
22      Q.    So even though it says "agreements,"
23 we're just talking about one agreement, right?
24      A.    Correct.
25      Q.    All right.  And then the next page in

Page 100

1 that document, page 4.
2       A.    Uh-huh.
3       Q.    If you look at paragraph 13, you've
4 alleged, "Upon information and belief, Fox Holdings,
5 Inc., continued Williams Restoration Company, Inc.'s
6 business and is the successor of Williams Restoration
7 Company, Inc., by."  I read that correctly, right?
8       A.    Correct.
9       Q.    Okay.  You've got "Performing the same
10 type of work as Williams Restoration Company,"
11 correct?
12      A.    Correct.
13      Q.    Okay.  And why don't you tell me what
14 the same type of work is.
15      A.    Restoration.
16      Q.    And the next is "Employing the same or
17 substantially the same employees as Williams
18 Restoration," right?
19      A.    Correct.
20      Q.    Do you know how many employees are the
21 same as between the companies?
22      A.    Approximately ten.
23      Q.    How do you know that?
24      A.    Remittance reports.
25      Q.    And so we talked earlier in your

BAC LOCAL UNION 15 WELFARE FUND, et al. vs. DEPOSITION OF CRAIG STEPHEN HYDEMAN
WILLIAMS RESTORATION, INC., et al.                                December 05, 2017

Page 117

1    Q.    And then going back to Exhibit 2
2  again, the blank CBA.  And just to clarify, you
3  maintain the CBAs in the Kansas City office?
4    A.    Yes, we keep the contracts in the
5  Kansas City office.
6    Q.    So you don't necessarily -- when
7  you're going to visit employers, you don't
8  necessarily take their executed CBAs with you?
9    A.    No, we do not.  They don't leave the
10 office.
11   Q.    Okay.  I'd like for you to turn to
12 Exhibit 3, the marketing materials.  Is that
13 something that you give to all employers, whether or
14 not they're signed or whether or not they're
15 signatory employers with Local 15 or not?
16   A.    Correct.
17   Q.    So if you're visiting a long-time
18 signatory employer, you would still give this to them
19 if they wanted some information on Local 15 and
20 training, right?
21   A.    Absolutely, continuing education.
22   Q.    So it's not strictly a marketing
23 document for employers that you want to organize?
24   A.    Not strictly, no.
25   Q.    You testified earlier that you had

Page 118

1  approximately 20 other employers in the Omaha area;
2  is that correct?
3    A.    Correct.
4    Q.    And how many employers -- how many
5  signatory employers do you have in the Kansas City
6  area?
7    A.    I believe just over 80.
8    Q.    So you have approximately a hundred
9  total employers that are signatory with Local 15?
10   A.    Well, some of those employers in Omaha
11 are also signatory in Kansas City and other areas of
12 the local.
13   Q.    And how many -- can you estimate how
14 many bids does a typical employer -- how many
15 projects does a typical employer bid on during the
16 course of a year?
17   A.    I would have no idea.
18   Q.    Could you give me an estimate?
19       MS. BORYCA:  Objection, lack of
20 foundation.
21 BY MR. SOLLARS:
22   Q.    You can go ahead and answer.
23   A.    Hundreds.
24   Q.    Would you be able to -- would you be
25 able to monitor the bidding practices of all of your

Page 119

1  signatory employers?
2    A.    No, I would not.
3    Q.    Why not?
4    A.    I don't have the manpower to do that.
5    Q.    Okay.  Would you be able to monitor
6  the customers of all employers on a routine basis to
7  determine what type of work they're doing?
8    A.    No, I would not.
9    Q.    Why not?
10   A.    Again, I don't have the manpower.
11   Q.    Okay.  I just want to go back to the
12 timeline you were talking about in your affidavit.
13 Get back Exhibit 1.  I just want to clarify that a
14 little bit.  So according to your affidavit, Local 15
15 merged with Local 1 on January 1st, 2014; is that
16 right?
17   A.    Correct.
18   Q.    Okay.  And then we've had some
19 testimony today that the sale of Williams Restoration
20 occurred in November of 2014; is that correct?
21   A.    Correct.
22   Q.    So when did you first start hearing
23 rumors of a possible sale?  Was it just after you
24 took control of Local 15 in early 2014?
25   A.    I would say several months in.

Page 120

1    Q.    So maybe spring of 2014?
2    A.    Spring.
3    Q.    Okay.  And is that when you first
4  started making regular visits up to Omaha?
5    A.    Yes, I started making regular visits
6  in January.
7    Q.    Okay.  And in 20 -- when you started
8  hearing rumors of a possible sale, do you recall what
9  those rumors were?
10   A.    Just concerns that the employees were
11 going to -- or the members would not have their
12 health and welfare and pension benefits contributed,
13 as well as their union scale.
14   Q.    Okay.
15       MR. SOLLARS:  All right.  I think
16 that's all the questions I have.
17       MS. BORYCA:  I don't have any
18 follow-up.
19       MS. OTT:  A couple things off the
20 record, I think.
21       (Discussion off the record.)
22       MR. SOLLARS:  We just wanted to go on
23 the record regarding the confidential witness
24 affidavit of Mr. Hydeman that was disclosed pursuant
25 to the protective order entered in this case.  The

BAC LOCAL UNION 15 WELFARE FUND, et al. vs. DEPOSITION OF CRAIG STEPHEN HYDEMAN
WILLIAMS RESTORATION, INC., et al.                                December 05, 2017

---

Page 121

1  transcript of this deposition I think is going to be
2  provided to plaintiff's counsel for review and will
3  remain subject to the protective order. I also spoke
4  with Miss Ott that the audit of Williams Restoration
5  through the sale date is probably going to be
6  provided by the end of the year.
7          MS. OTT:  And pursuant to a prior
8  discussion with counsel for plaintiffs, it was agreed
9  that to the extent there are follow-up questions
10  needed related to that audit, that they will make
11  Mr. Hydeman available should that be necessary.  Is
12  that correct, Mr. Sollars?
13          MR. SOLLARS:  Yes, that's correct.
14          MS. BORYCA:  All right.  I think that
15  concludes things.  Thank you.
16          MR. SOLLARS:  I think he will want to
17  read and sign.
18          (Deposition concluded at 2:21 p.m.)
19
20
21
22
23
24
25

---

Page 122

1
2
3
4        _____
5            CRAIG STEPHEN HYDEMAN
6
7        Subscribed and Sworn to before me this
8  ____ day of _____, 2017.
9
10
11       _____
12            Notary Public
13
14       County of _____
15
16       State of _____
17
18
19  BAC LOCAL UNION 15 WELFARE FUND, ET AL. vs. WILLIAMS
20  RESTORATION COMPANY, INC., and FOX HOLDINGS, INC.
21
22
23
24
25

---

Page 123

1
2                    ERRATA SHEET
2  RE:  BAC LOCAL UNION 15 WELFARE FUND, ET AL. vs.
    WILLIAMS RESTORATION COMPANY, INC., and FOX HOLDINGS,
3  INC.
3  DEPOSITION OF:  CRAIG STEPHEN HYDEMAN
4
5  PG/LN NO.    CORRECTION    REASON FOR CHANGE
6  :_____:_____:_____
7  :_____:_____:_____
8  :_____:_____:_____
9  :_____:_____:_____
10 :_____:_____:_____
11 :_____:_____:_____
12 :_____:_____:_____
   .
13 :_____:_____:_____
14 :_____:_____:_____
15 :_____:_____:_____
16 :_____:_____:_____
17 :_____:_____:_____
18 :_____:_____:_____
19 :_____:_____:_____
20
        _____ I certify that I have read my deposition in
21 the above case and I request that no changes be made.
        _____ I certify that I have read my deposition in
22 the above case and I request that the above changes
   be made.
23
              SIGNATURE OF DEPONENT:
24            _____
25            DATED: _____

---

Page 124

1              C E R T I F I C A T E
2
3          I, Sharon R. Larrick, a Certified Court
4  Reporter, do hereby certify:
5          That prior to being examined the witness was
6  by me duly sworn;
7          That said deposition was taken down by me in
8  shorthand at the time and place hereinbefore stated
9  and was thereafter reduced to writing under my
10  direction;
11          That I am not a relative or employee or
12  attorney or counsel of any of the parties, or a
13  relative or employee of such attorney or counsel, or
14  financially interested in the action.
15          The original transcript is in the custody of:
16      MS. BONNIE M. BORYCA
        ERICKSON & SEDERSTROM, P.C.
17      10330 Regency Parkway Drive
        Omaha, NE  68114
18
        WITNESS my hand and seal this 11th day of
19  December, 2017.
20
21      _____
              Sharon R. Larrick
22              CCR NO. 765
23
    BAC LOCAL UNION 15 WELFARE FUND, ET AL. vs. WILLIAMS
24  RESTORATION COMPANY, INC., and FOX HOLDINGS, INC.
25

---

122

CRAIG STEPHEN HYDEMAN

Subscribed and Sworn to before me this

4 day of JAN_____, 2017.

D FITE
Notary Public, Notary Seal
State of Missouri
Jackson County
Commission # 15368649
My Commission Expires December 22, 2019

_____
Notary Public


County of Jackson_____


State of Missouri_____


BAC LOCAL UNION 15 WELFARE FUND, ET AL. vs. WILLIAMS

RESTORATION COMPANY, INC., and FOX HOLDINGS, INC.

METROPOLITAN
COURT REPORTING + LEGAL VIDEO
11880 COLLEGE BOULEVARD, SUITE 405
OVERLAND PARK, KANSAS 66210
1.800.748.7511 · 913.317.8800 · FAX 913.317.8850

123

```
 1                    ERRATA SHEET

 2   RE:  BAC LOCAL UNION 15 WELFARE FUND, ET AL. vs.
     WILLIAMS RESTORATION COMPANY, INC., and FOX HOLDINGS,
 3   INC.

 4   DEPOSITION OF:  CRAIG STEPHEN HYDEMAN

 5   PG/LN NO.    CORRECTION        REASON FOR CHANGE

 6   :_____:_____:_____

 7   :_____:_____:_____

 8   :_____:_____:_____

 9   :_____:_____:_____

10   :_____:_____:_____

11   :_____:_____:_____

12   :_____:_____:_____

13   :_____:_____:_____

14   :_____:_____:_____

15   :_____:_____:_____

16   :_____:_____:_____

17   :_____:_____:_____

18   :_____:_____:_____

19   :_____:_____:_____

20   ___X___  I certify that I have read my deposition in
21   the above case and I request that no changes be made.
             I certify that I have read my deposition in
22   the above case and I request that the above changes
     be made.
23
                      SIGNATURE OF DEPONENT:
24                    _____
25                    DATED: 1-4-2018
```



11880 COLLEGE BOULEVARD, SUITE 405
OVERLAND PARK, KANSAS 66210
1.800.748.7511 · 913.317.8800 · FAX 913.317.8850
METROPOLITAN COURT REPORTING · LEGAL VIDEO