# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BAC LOCAL UNION 15 WELFARE FUND, et al., | )<br>)<br>) |
| Plaintiffs, | )  CIVIL ACTION<br>) |
| v. | )  No. 16-2242-KHV<br>) |
| WILLIAMS RESTORATION COMPANY, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

Plaintiffs BAC Local Union 15 Welfare Fund, et al., bring suit against Williams Restoration Company, Inc. and Fox Holdings, Inc. Plaintiffs are trust funds under the Labor Management Relations Act, as amended, Section 302, 29 U.S.C. § 186, and employee benefit plans under Section 3 of the Employee Retirement Income Security Act, 29 U.S.C. § 1003 ("ERISA"). Plaintiffs seek to collect unpaid contributions to an employee benefit plan under a collective bargaining agreement with Williams Restoration. Pretrial Order (Doc. #152) filed March 14, 2019 at 5-6. Plaintiffs also contend that Fox Holdings is a successor to Williams Restoration and is thus bound and liable for unpaid contributions. Id. This matter is before the Court on Plaintiffs' Motion For Partial Summary Judgment Against Defendant Fox Holdings, Inc. (Doc. #139) filed February 11, 2019, which seeks to hold Fox Holdings liable as a matter of law on a theory of successor liability. For reasons stated below, the Court overrules plaintiffs' motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Liberty Lobby, 477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993).  The heart of the inquiry is "whether the

evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**Factual Background**

For purposes of summary judgment, the following facts are either uncontroverted or where controverted, the contentions of each party are noted.[1]

Williams Restoration is in the business of waterproofing, concrete and masonry restoration and roofing. Jeffery Williams is its president and owner. Fox Holdings is in the business of commercial and industrial waterproofing and concrete and masonry restoration. Jordan Fox is its president and owner.

**I.     Williams Restoration's Agreement With Plaintiffs**

On July 10, 2013, Williams Restoration and BAC Local Union 1 executed an agreement, effective through May 31, 2016 "and thereafter from year to year unless changed in accordance with Article XVIII of this Agreement." Agreement at 1, Exhibit 5 to Index Of Exhibits (Doc. #142) filed February 11, 2019 at 1.[2] Among other things, the agreement obligates Williams Restoration to contribute to the union's health, welfare, pension, training and education and promotion funds. Id. at 11. Article XVIII states that the agreement will expire on May 31, 2016

---

[1]     The Court includes only those facts which are material to its decision herein and supported by the record.

[2]     Plaintiffs assert that the agreement is a collective bargaining agreement, but Fox Holdings denies that it is a collective bargaining agreement in the "ordinary" sense because Williams Restoration did not engage in collective bargaining and has never had a majority-union workforce. Fox Holdings asserts that the agreement is a pre-hire agreement to allow "open shops" which permit Williams Restoration to hire both union and non-union employees. See Defendant Fox Holdings, Inc.'s Memorandum In Opposition To Plaintiffs' Motion For Partial Summary Judgment (Doc. #157) filed April 3, 2019 ("Memorandum In Opposition") at 3-4.

and that "[e]ither party desiring changes in provisions of this Agreement shall notify the other party in writing at least ninety (90) days prior to May 31, 2016 and this Agreement than [sic] shall be opened for discussion relative to such change or changes." Id. at 17. In addition, Article XIV provides as follows:

> This Agreement shall be binding on all successors and assigns of the Employer, in the event of a sale of transfer of the Employer's business, the Employer agrees to give the Union ten (10) days notification of said proposed sale or transfer of assets and agrees this contract shall become a part of and bind the successor Employers.

Id. at 15. Williams Restoration never notified plaintiffs of any proposed sale or transfer of assets.

At some point between July and September of 2014, BAC Local Union 1 notified Williams that it had merged with BAC Local Union 15. Williams Restoration agreed to an amendment, effective November 1, 2014, which acknowledged the merger, changed the identity of BAC Local Union 1 to BAC Local Union 15, and changed where Williams Restoration directed its benefit payments. See id. at 18.

## II. Asset Purchase Agreement Between Williams Restoration And Fox Holdings

Williams Restoration engaged Sunbelt Business Advisors, Inc. to solicit a sale of its assets. In early September of 2014, Williams Restoration and Fox Holdings began negotiating an Asset Purchase Agreement ("APA"). On November 6, 2014, they executed the final APA by which Fox Holdings purchased assets and equipment from Williams Restoration.

The record reveals a genuine issue of material fact whether, during the course of negotiations, Williams disclosed to Fox Holdings the agreement of July 10, 2013 or its successor provision.[3] The parties also dispute whether Williams Restoration and Fox Holdings specifically

---

[3] Plaintiffs assert that Williams told Fox Holdings about the collective bargaining agreement. Fox Holdings asserts that Williams never referred to the agreement as a collective

revised the APA to address disclosure of the collective bargaining agreement or any other union contracts.[4]

---

bargaining agreement, and in fact told Fox Holdings that it did not have a "union contract." Plaintiffs assert that Williams gave Fox a copy of the agreement, but Fox Holdings asserts that Williams only provided an unexecuted boilerplate agreement which Fox Holdings did not believe pertained to Williams Restoration. Fox Holdings asserts that Williams stated that his father may have had a union contract 20 years ago, but that he had not seen the contract and did not have a copy of it. Fox Holdings asserts that when it pressed for more documentation, Williams assured it that such documentation did not exist. Fox Holdings asserts that Jordan Fox did not receive a copy of the signed agreement until one and a half to two years after the asset sale had closed.

Fox Holdings asserts that it did not discuss the successor provision with Williams and that Williams had claimed that Williams Restoration was a non-union company. Indeed, Fox Holdings asserts that it made clear that it was only interested in purchasing a non-union company. Fox Holdings asserts that Linda Roberson specifically asked whether Williams Restoration was a union company and the response from Sunbelt was "no." Fox Holdings asserts that Williams never discussed with Fox Holdings BAC Local Union 15 welfare benefits for employees of Williams Restoration.

[4] Sunbelt drafted the first version of the APA, which stated in Section 3.10, "Organized Labor Matters," as follows:

> During the past three years (i) the Seller have [sic] not been and is not currently bound by or subject to and none of its assets or properties is bound by or subject to any arrangement or agreement with any labor union, (ii) no employees of the Seller have been or are currently represented by any labor union or covered by any collective bargaining agreement, (iii) to the knowledge of the Seller, no campaign to establish such representation has been commenced or is currently in progress, and (iv) there has not been nor is there currently any pending, or, to the knowledge of the Seller, threatened labor dispute involving the Seller and any group of its employees nor has the Seller experience any labor interruptions. The Seller believes its relationship with the employees to be good.

APA Draft at 7, Ex. 60 to Index Of Exhibits (Doc. #142). Williams Restoration, through Sunbelt, later revised Section 3.10 to state that Williams Restoration had a "union contract." The final version of Section 3.10 provided as follows:

> Seller employs and has employed union employees, specifically Bricklayer Union members and has been party to the overall union contract. There has not been nor is there currently any pending or, to the knowledge of the Seller, threatened labor dispute involving the Seller and any group of its employees nor has the Seller experienced any labor interruptions. The Seller believes its relationship with the

### III. Business Of Fox Holdings Post-Sale

On the advice of Small Business Administration loan officers, Fox Holdings did not make any changes during the six months immediately after the asset purchase. After the sale, Fox Holdings performed the same type of work as Williams Restoration, conducted business as Williams Restoration had performed, retained the same non-supervisory employees and used the same primary material suppliers, telephone number, mailing address and principal place of business as Williams Restoration. Until April of 2015, when it gave raises, Fox Holdings also maintained the same wages for employees.

The parties dispute the extent to which Fox Holdings retained the same supervisory employees and customers. Plaintiffs assert that Fox Holdings assumed the contracts of Williams Restoration and performed work on union-only projects, but Fox Holdings asserts that it has never signed a contract to work on a union-only project. Fox Holdings also asserts that it employed additional management employees after the sale, including Fox, Dickie Roberson and Linda Roberson.

During a slow work period, at least two employees attended union training which they believed was mandatory. Fox Holdings did not pay for this training.

---

employees to be good.

APA at 7, Ex. 14 to Index Of Exhibits (Doc. #142). Plaintiffs assert that Williams "requested a change to the initial asset purchase agreement to reflect that Williams Restoration was bound to a [collective bargaining agreement] with BAC Local Union 15." Suggestions In Support Of Plaintiffs' Motion For Partial Summary Judgment Against Defendant Fox Holdings, Inc. (Doc. #140) filed February 11, 2019 ("Suggestions In Support") at xv. Fox Holdings asserts that Sunbelt revised the language in Section 3.10 to reflect that "there was a union contract" and that the revision in Section 3.10 reflected Williams's statement that his father had union contracts in the past. Moreover, Fox Holdings asserts that Williams did not produce any document to Sunbelt or Fox Holdings that would have disclosed benefit contributions to plaintiffs prior to the asset sale.

## IV. Fox Holdings's Payment To Plaintiffs

For a few months after the asset sale, Fox Holdings continued to remit benefit fund contributions to plaintiffs. Initially, it did not withhold union dues because it did not know that Williams Restoration had done so. After the first payroll, however, an employee complained and claimed (inaccurately) that his health insurance would immediately terminate if Fox Holdings did not pay union dues. During the same time, Fox Holdings tried to obtain group health insurance for all employees. To ensure that no employee lost health insurance coverage in the interim, Fox Holdings determined that it should keep contributing to the union funds. After March of 2015, however, Fox Holdings determined that it should not continue to contribute to the union funds and ceased to do so. Fox Holdings had only contributed to the funds to preserve health insurance for employees who had it.

After Fox Holdings ceased to pay union dues and contributions, a few union member employees elected to resign or drop out of the union and continue working for Fox Holdings, under its terms of employment. Since at least May of 2015, Fox Holdings has not knowingly employed any members of the BAC Local Union 15 and no employee has requested that it pay benefits to the union's pension, training, health and welfare, or any other fund of the union.

## V. Fox Holdings's Interaction With Union Representatives

Within the first weeks of when Fox Holdings took over Williams Restoration, union representative Jared Skaff visited Fox Holdings and urged Fox to sign a union contract. Skaff never disclosed that Williams Restoration had a union contract or that the union viewed Fox Holdings to be bound by any such contract. In May of 2015, Craig Hydeman, president of the BAC Local 15, visited Fox Holdings and represented that the Williams Restoration contract was

enforceable against Fox Holdings. As evidence, Hydeman showed a blank, unsigned contract to Fox. Fox Holdings did not sign a contract with the union.

That same month, plaintiffs sent a letter to Williams Restoration, demanding it pay delinquent contributions and permit an audit of company payroll records.

## VI.  Post-Sale Assets Of Williams Restoration

Williams Restoration has not conducted any business since the asset sale to Fox Holdings Williams Restoration does not have any non-cash assets and Williams is its only officer and shareholder. As of April, May and June of 2018, Williams Restoration had a bank account balance of $427.90, Williams Restoration received a cash payment of $1.9 million from the asset sale, and Fox Holdings asserts that Williams distributed it to his personal account. Fox Holdings continues to make asset sale payments of $6,351.75 per month (which shall continue through 2021), and lease payments of $3,800 per month.

## VII.  NLRB Proceeding

BAC Local Union 15 filed a charge with the National Labor Relations Board ("NLRB"), alleging that by its conduct, Fox Holdings adopted the agreement between Williams Restoration and the union. On June 26, 2015, the Acting Regional Director of the NLRB Naomi L. Stuart determined that Fox Holdings did not have an obligation to abide by Williams Restoration's agreement and dismissed the charge.

## Analysis

Plaintiffs assert that Fox Holdings is liable for delinquent contributions based on the following theories: (1) successor liability under federal common law; (2) successor liability under the agreement dated July 10, 2013 between plaintiffs and Williams Restoration; and (3) adoption

of the agreement by Fox Holdings.[5] Genuine issues of material fact preclude summary judgment on any of these theories.

I.      **Successor Liability Under Federal Common Law**

Plaintiffs assert that Fox Holdings is liable under the federal common law doctrine of successor liability.

Under the general common law rule, asset purchasers do not assume the liabilities of the seller corporation. See <u>Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac</u>, 920 F.2d 1323, 1325-26 (7th Cir. 1990) (describing common law rule). Beginning with <u>Golden State Bottling Co. v. NLRB</u>, 414 U.S. 168 (1973), however, when necessary to protect important employment-related policies, federal courts have developed a common law exception to this rule. See <u>Einhorn v. M.L. Ruberton Const. Co.</u>, 632 F.3d 89, 94 (3rd Cir. 2011). In <u>Golden State</u>, the Supreme Court held that under the National Labor Relations Act, a successor could be held liable for its predecessor's unlawful discharge of an employee where the successor had notice of the unfair practice and "continued, without interruption or substantial change, the predecessor's business operations." <u>Golden State</u>, 414 U.S. at 425. Applying this reasoning, the Seventh Circuit in <u>Artistic Furniture</u>, held that to vindicate important federal statutory policy, a successor may be liable for its predecessor's delinquent ERISA fund contributions where the buyer had notice of the liability prior to the asset sale and engaged in "continuity of operations."[6] 920 F.2d

---

[5]     The Court considers the second and third arguments together.
[6]     Discussing (and adhering to) <u>Artistic Furniture</u>, the Third Circuit stated as follows:

> In so holding, the Seventh Circuit departed from the general common law rule that an entity that purchases the assets of another does not assume the seller's liabilities unless one of the following exceptions applies: the purchaser expressly or impliedly assumed liability; the transaction

at 1329. Since then, many courts of appeals have embraced the reasoning of Artistic Furniture to impose successor liability for unpaid pension contributions. See Einhorn, 632 F.3d at 99 ("No court of appeals, to our knowledge, has rejected the holding in Artistic Furniture.") (footnote omitted). The Tenth Circuit has not explicitly embraced Artistic Furniture,[7] but in Trujillo v. Longhorn Mfg. Co., 694 F.2d 221 (10th Cir. 1982), it considered a successor's liability under Title VII for discriminatory practices of its predecessor. See Walker v. Faith Technologies, 344 F. Supp. 2d 1261, 1267 (D. Kan. 2004).

In Trujillo, the Tenth Circuit endorsed the Sixth Circuit nine-factor approach to determining successor liability in EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086 (6th Cir. 1974).[8] Later decisions distilled the nine MacMillan factors into a three-part test:

---

amounted to a de facto merger; the purchasing corporation is a mere continuation of the seller; or the transfer of assets was for the fraudulent purpose of escaping liability for unpaid debts.

Einhorn, 632 F.3d at 93-94.

[7] Fox Holdings asserts that courts that have considered successor liability for delinquent pension fund contributions under ERISA after an asset sale presume that the predecessor's debt was incurred *prior* to the asset sale, and that no court has extended the reasoning of Artistic Furniture to ongoing obligations. Because plaintiffs are not entitled to summary judgment as to accrued obligations, the Court need not address whether Artistic Furniture should be extended to future obligations.

[8] The MacMillan factors are as follows:
(1) whether the successor company had notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether it uses the same or substantially the same work force; (6) whether it uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether it uses the same machinery, equipment and methods of production; and (9) whether it produces the same product.

(1) whether the successor had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or prior to the purchase was able, to provide the relief requested; and (3) whether the predecessor and successor engaged in continuous business operations. Walker, 344 F. Supp. 2d at 1267; see Chao v. Concrete Mgmt. Res., L.L.C., No. 08-2501-JWL, 2009 WL 564381, at *2 (D. Kan. Mar. 5, 2009) (citing Trujillo, 694 F.2d at 224); Spears v. Mid-America Waffles, Inc., No. 11-2273-CM, 2011 WL 6304126 *4 (D. Kan. Dec. 16, 2011).

Applying the three-part test, the Court first notes genuine issues of material fact whether Fox Holdings had actual or constructive knowledge of the agreement between plaintiffs and Williams Restoration. The record also reveals a genuine issue of material fact whether Fox Holdings and Williams Restoration engaged in substantial continuity of business operations, and whether Williams Restoration can pay the delinquent contributions. See Memorandum In Opposition (Doc. #157) at 36. In other words, plaintiffs have not established that as a matter of law, Fox Holdings is liable under the federal common law of successor liability.

## II.     Successor Provision In Agreement Between Williams Restoration And Plaintiffs

Plaintiffs assert that at the time of the asset sale, Williams Restoration was bound to a collective bargaining agreement and that by its terms, Fox Holdings is bound as successor to Williams Restoration. Plaintiffs rely on Article XIV, which states as follows:

> This Agreement shall be binding on all successors and assigns of the Employer, in the event of a sale of [sic] transfer of the Employer's business, the Employer agrees to give the Union ten (10) days notification of said proposed sale or transfer of assets and agrees this contract shall become a part of and bind the successor Employers.

Agreement at 15. Fox Holdings asserts that it did not know about the agreement between

---

Trujillo, 694 F.2d at 225 n.3 (citing MacMillan, 503 F.2d at 1094).

plaintiffs and Williams Restoration, and did not agree to or assume it. See Memorandum In Opposition (Doc. #157) at 20.

In NLRB v. Burns Int'l Sec. Svcs., Inc., 406 U.S. 272, 274 (1972), the Supreme Court considered whether the NLRB could order a successor employer to observe the terms of a collective bargaining agreement between the union and its predecessor. In Burns, the successor had notice of the predecessor's collective bargaining agreement but did not consent to be bound by it, and nothing in its actions indicated that it had assumed its obligations. Id. at 287. The Supreme Court held that while the successor was obligated to recognize and bargain with the incumbent union, it was not bound by the substantive provisions of the agreement which the predecessor had negotiated and to which the successor had not consented.[9] Id. at 281-82; see Borden, Inc. v. NLRB, 19 F.3d 502, 509 (10th Cir. 1994); NLRB v. Tricor Prod., Inc., 636 F.2d 266, 269 (10th Cir. 1980). It further held that while in some cases the NLRB might properly find that as a matter of fact the successor had assumed the obligations under the old contract, such a duty does not "ensue as a matter of law from the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor." Burns, 406 U.S. at 291. Here, Fox Holdings may or may not have known about the collective bargaining agreement, and it did not explicitly consent to be bound by it. Accordingly, the question is whether its actions indicated that it had assumed the obligations of the agreement.

Plaintiffs assert that Fox Holdings manifested an intent to be bound, in that it remitted

---

[9] The Supreme Court noted that the "source of [the successor's] duty to bargain with the union is not the collective-bargaining contract but the fact that it voluntarily took over a bargaining unit that was largely intact and that had been certified within the past year." Burns, 406 U.S. at 287.

contributions to plaintiffs during the first five months of its ownership, withheld dues from union members, paid union-scale wages, held itself out as a union company to perform work on certain projects and utilized employee training that one plaintiff offered.  See Suggestions In Support (Doc. #140) at 25.  Fox Holdings disagrees.  It presented evidence that it only withheld union dues to prevent employees from losing health insurance while it made decisions regarding employee health insurance.  Fox Holdings presented evidence that it kept wages the same while it figured out how to set wages, not because it agreed to a union-scale or prevailing wage.  See Memorandum In Opposition (Doc. #157) at 37.  It also presented evidence that rebuts plaintiffs' assertions that it held itself out as a union company and "utilized" union training.  Fox Holdings also notes that the NLRB has already dismissed plaintiffs' claim that by its conduct, Fox Holdings assented to the collective bargaining agreement.

Genuine issues of material fact prevent the Court from determining as a matter of law that through its conduct, Fox Holdings manifested an intent to be bound by the agreement between plaintiffs and Williams Restoration.

## Conclusion

Viewing the record in the light most favorable to the non-moving party, Fox Holdings has demonstrated genuine issues of material fact whether it is liable as successor to Williams Restoration.  Plaintiffs are not entitled to partial summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion For Partial Summary Judgment Against Defendant Fox Holdings, Inc. (Doc. #139) filed February 11, 2019 is **OVERRULED**.

Dated this 12th day of July, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge